## ROGERS *v.* STATE.

Opinion delivered December 21, 1908.

EVIDENCE—RES GESTAE.—In a prosecution for robbery the prosecuting witness cannot be corroborated by proof that two hours after the robbery he stated to a police officer that defendant committed the robbery, nor is such testimony admissible as part of *res gestae.*

Appeal from Craighead Circuit Court, Jonesboro District; *Frank Smith,* Judge; reversed.

*J. F. Gautney,* for appellant.

The testimony of Arrington was incompetent, hearsay, contradictory of defendant, and hence prejudicial. It was no part of the *res gestae.* 67 Ark. 594, 604; 56 *Id.* 326.

*William F. Kirby,* Attorney General, and *Daniel Taylor,* Assistant, for appellee.

The statement detailed by Arrington were clearly part of the *res gestae.* 66 Ark. 494. A reversal is never ordered for the erroneous admission of incompetent testimony which is but cumulative and corroborative of competent testimony properly admitted. 77 Ark. 74; 76 *Id.* 276; 74 *Id.* 417; 68 *Id.* 607; 58 *Id.* 125; *Ib.* 446; 56 *Id.* 37; 32 *Id.* 337; 22 *Id.* 79; 15 *Id.* 372.

Hill, C. J.   Ben Rogers was indicted by the grand jury of Craighead County for robbery, was convicted, and has appealed. Fielder testified that on the night of May 31, 1908, in the city of Jonesboro, he left a restaurant, and was accompanied by one Tomlinson, and the defendant Rogers followed them.   That Tomlinson offered him a drink of whisky, which he refused, and the defendant stepped up and said he would take a drink, and Tomlinson handed him the bottle, and he took a drink and dropped behind them, with the bottle.   He and Tomlinson walked under the shadow of some trees, and some one hit him from behind with a bottle on the side of the head and face, and he was knocked senseless.   After he fell some one beat him on the head and face with his fists; and either Tomlinson or the defendant ran his hands in his pockets and got his money.   "After I was hit, I do not remember anything until I was being talked to by Arrington, chief of police, in a plumbing shop on South Main Street."   He was then permitted, over the objection of defendant, to state that "Mr. Arrington asked me who robbed me, and I told him a white man whose name I did not know and a negro whom they called Ben."   The next morning he went to the jail to see if he could identify the defendant, who had been arrested.   His eyes were so swollen that he could not see distinctly, and he asked that the defendant talk.   The defendant did so, and he recognized him by his voice.   The witness does not appear to have been cross-examined—at least the bill of exceptions does not show what part of his examination is in chief and what is cross-examination; and there is no inconsistent or contradictory statement in his testimony indicative that any part of it was brought out by cross-examination.

Arrington, the chief of police, was permitted to testify, over the objections of defendant, that he had arrested defendant the night that Fielder was robbed, and that he found Fielder in a plumbing shop on South Main Street.   "I asked Fielder who robbed him; he said a white man and a negro; that he did not know who the white man was, but they called the negro Ben Rogers." No money or other property was found on the defendant, after his arrest, that belonged to Fielder.

It appears that from one to two hours elapsed from the time that Fielder was robbed until he made the statement to the chief

of police in the plumbing shop. The defendant testified, denying that he had robbed Fielder, and stated that he was at another place at the time of the occurrence. Several other witnesses testified, tending to sustain his alibi.

The subject of prior consistent statements was recently considered by this court in *Burks* v. *State,* 78 Ark. 271, where one phase of it was discussed and the authorities reviewed. The court said: "After all, the effect of proof of previous consistent statements could only be to corroborate the statement of the witness under oath by his own words uttered on another occasion. It would add nothing to his statement upon the witness stand, either as to his testimony on the main issue, or as to his denial of the contradiction. We are of the opinion that the admission of the testimony by the court was improper and prejudicial, and should not have been allowed."

This subject is exhaustively reviewed in 2 Wigmore on Evidence, § 1122 *et seq.,* and the occasion and time when such statements may be admitted fully explained. In section 1124 Mr. Wigmore says: "When the witness has merely testified on direct examination, without any impeachment, proof of consistent statements is unnecessary and valueless." In some classes of crime statements of a complaint being made are admissible, notably rape. 2 Wigmore, Evidence, 1134. Likewise, statements made by the owner or possessor of goods after an alleged robbery or larceny of them may, under some circumstances, be admitted. Upon principle, however, only the fact of the complaint, and not the details of the statement, will be admissible. 2 Wigmore, Evidence, § 1142.

Applying the principles here, it is plain to be seen that the prior consistent statements were inadmissible; and, as their tendency was naturally to reinforce the testimony of the witness prior to an attack upon it, by incompetent testimony, it would ordinarily be prejudicial. It is necessarily so in this case, as the conviction depends solely upon the testimony of Fielder, as against the testimony tending to prove that the defendant was at another place, and could not and did not commit the robbery.

The Attorney General seeks to sustain the admission of these statements as a part of the *res gestae.* Mr. Wharton's definition and explantation of *res gestae,* quoted in *Little Rock Traction &*

*Electric Co.* v. *Nelson,* 66 Ark. 494, has often been approved by this court. He says: "Their sole distinguishing feature is that they must be the automatic and necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate preparations for, or emanations of, such act, and are not produced by the calculated policy of the actors. They are the act talking for itself, not what people say when talking about the act." In this case the evidence is what the person said when talking about the act, and was not the voluntary emanation of the act itself. See further applications of the principle in *Williams* v. *State,* 66 Ark. 264; *Blair* v. *State,* 69 Ark. 558; *Kansas City S. Ry. Co.* v. *Morris,* 80 Ark. 528; *Beal & Doyle Dry Goods Co.* v. *Carr,* 85 Ark. 479.

For the error indicated, the judgment is reversed and the cause remanded for new trial.