# HARRIS v. OGDEN STEAM LAUNDRY COMPANY.

No. 2229. Decided September 15, 1911 (117 Pac. 700).

1. APPEAL AND ERROR—PRESUMPTIONS. The Supreme Court must assume that the jury followed the instructions, unless the verdict and record show the contrary. (Page 442.)

2. MASTER AND SERVANT—INJURIES—ACTIONS—SUFFICIENCY OF EVIDENCE. In an employee's action for personal injuries by having his arm caught in a wheel after he had become dizzy from the fumes of gasoline used in dry cleaning, evidence *held* to sustain a finding that the foreman knew of the dangers incident to gasoline fumes as used by defendant. (Page 442.)

3. MASTER AND SERVANT—SIMILAR FACTS. In an employee's action for personal injuries by having his arm caught in a revolving wheel, after he had become dizzy from gasoline fumes, and had fallen against it, in which the answer denied knowledge of the effect of gasoline fumes, and that it had the effect claimed by plaintiff, evidence was admissible as to the effect of gasoline fumes upon witnesses. (Page 442.)

4. EVIDENCE—OPINION EVIDENCE—NONEXPERT TESTIMONY. Nonexperts who had witnessed the effect of gasoline fumes on persons working in a room could testify that its effect in the instances they had seen was to cause dizziness. (Page 443.)

5. EVIDENCE—PRESUMPTIONS—UNIFORMITY OF NATURAL PHENOMENA. It is presumed that individuals of both sexes are normal as to natural functions of the body or organs until the contrary appears; so that, if gasoline fumes are shown to cause dizziness to a number of persons coming in contact therewith under certain conditions, it may be presumed, in absence of contrary evidence, that all persons, irrespective of some difference in age, will be similarly affected under similar circumstances. (Page 444.)

6. APPEAL AND ERROR—VERDICT—CONCLUSIVENESS. If there is any substantial evidence to support every fact essential to a recovery, the Supreme Court cannot interfere with the verdict. (Page 446.)

7. APPEAL AND ERROR—FINDINGS—CONCLUSIVENESS—WEIGHT OF EVIDENCE. The Supreme Court cannot determine what, if any, weight should be given to the evidence of a particular witness. (Page 447.)

APPEAL from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by Frank B. Harris, an infant, by Telia D. Harris, his guardian, against the Ogden Steam Laundry Company.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*C. S. Varian* for appellant.

*H. H. Henderson* and *J. A. Davis* for respondent.

FRICK, C. J.

Frank B. Harris, a minor, who will hereinafter be called respondent, commenced this action by his guardian *ad litem* to recover for personal injuries alleged to have been sustained by him through the negligence of appellant.

The complaint, after stating that the respondent is a minor of the age of seventeen years, that a guardian had been appointed for him, and after alleging the corporate capacity and business of appellant, proceeds as follows: "That on the 10th day of May, 1909, plaintiff was employed by the defendant to work in its laundry, in what is known as its 'dry cleaning department.' That said department consists of a room about ten feet square and seven and one-half feet high, and in said room there are two revolving washing machines and one revolving extractor. That clothes are cleaned by putting them in said washing machines, which contain about seventy (70) gallons of gasoline. Then, after the clothes are washed, they are taken from the washing machine and placed in the extractor for drying. That said extractor when in use makes about nine hundred (900) revolutions a minute. That when said washing machine and extractor are in use, gaseous fumes arise from the gasoline, then and there being used, in such quantities as to cause dizziness, sickness, and unconsciousness to a person working in said room. That on the afternoon of the 11th day of May, 1909, being the afternoon

of the second day of his employment, while he was in the performance of his duties and working in said room, and while said washing machines and extractor were then and there being used, he was made sick and dizzy and was overcome by the fumes of the gasoline then and there being used, so that he stumbled and fell and brought his right arm in contact with the clothes that were then and there being dried in said extractor, and without fault on his part his arm was twisted off at the elbow joint and left in said extractor. That by said twisting it has been necessary for plaintiff to have his right arm amputated about four inches above the elbow. Plaintiff further alleges that on said day he was inexperienced with the use of machinery, and with the effect of the gasoline fumes arising from the use of gasoline then and there being used. That the defendant did not give him any proper instructions concerning the effect of the gasoline fumes, all of which the defendant knew, or which by the exercise of ordinary care could have been known, and was unknown to the plaintiff. That the defendant did not warn him of the danger arising from said gaseous fumes, and the danger of operating said machinery, where said gaseous fumes were. Plaintiff further alleges that the defendant was guilty of carelessness and negligence, in this to-wit: That the defendant failed to give him any or proper instructions of the dangerous effects of the fumes arising from gasoline as it was then and there used, and in failing to use ordinary care in furnishing the plaintiff a safe place in which to work." It was further alleged that by reason of the carelessness and negligence of appellant aforesaid the respondent was permanently maimed and crippled, and that he sustained damages in the sum of $20,000, for which he prayed judgment.

Appellant in its answer admitted the allegations respecting the minority of respondent and its own corporate capacity, admitted that respondent was employed by it to work in its laundry in the dry cleaning department, admitted that respondent "was injured by permitting his right arm to be caught in the extractor, whereby it became necessary to amputate the same, . . . admits that this defendant did

not give plaintiff any instructions in or concerning the effect of gasoline fumes, nor warn him of the danger arising from the same, and because there were no such fumes in quantity to be injurious, and because defendant did not know of and could not anticipate any danger from the fumes of gasoline, if any there were in sufficient quantities to be injurious, and defendant denies each and every allegation in the complaint." Appellant, in substance, further affirmatively alleged that for more than two years it had conducted a dry cleaning department in connection with its laundry business, and, as is the custom in carrying on such departments, appellant "made use of gasoline for the purpose of dry cleaning the clothes in the washing machines," and that the fumes or odors of the gasoline had never been offensive, and that the same "are not deleterious or dangerous in their effects upon people, and are not liable to and do not make them dizzy or sick." The appellant further averred that respondent was injured through his own negligence, and that "the injury suffered by the plaintiff was the result of an accident, and not otherwise, which was not and could not have been anticipated or guarded against by this defendant."

Upon substantially the foregoing issues there was a trial to a jury, which resulted in a verdict in favor of respondent. Judgment was duly entered upon the verdict, and, after denial of a motion for a new trial, appellant presents the record on appeal.

The assignments of error are numerous, but counsel in his brief and argument has grouped them under four heads designated by the capital letters A. B. C. and D. We shall, as briefly as possible, examine the errors as grouped by counsel.

The errors embraced in group A are stated by counsel in his brief thus: "The court erred in permitting witnesses for the plaintiff to testify as to their knowledge of the effects of gasoline fumes acquired by personal experience and observation of others." Over appellant's objections, witnesses were permitted to testify substantially as follows: Mr. Sumner, a witness for respondent, in effect testified that he had been in the business of cleaning with gasoline for about

eighteen years; that he was employed by appellant in its cleaning department in April, 1909. He then described and gave the size of the rooms, which, he said, were small for the business in which appellant's cleaning department was located. He also stated the amount of gasoline that was used in the washers daily, and how they and the extractor which injured the respondent were operated. He then said that he and Mr. Hampton, the man in charge of appellant's business (quoting from appellant's abstract), "talked about the condition of the room (the cleaning room) two or three times. We talked it over about the place being too small, too dangerous to work in on account of fire, and then being overcome with gas, thought it was unsafe, and I told him so, and he said it was. He said the place was too small for the amount of gasoline consumed. Every day they lost ten or fifteen gallons by evaporation." The witness then stated that he knew the effect that gasoline fumes had upon a person, and that he himself, while working in appellant's cleaning rooms or department, had been affected by the fumes. He on both direct and cross-examination fully stated how the fumes affected him, and it is not deemed necessary to repeat his evidence here. Another witness named Wilson testified that he was a cleaner and dyer; that he had used gasoline in the business for about seven years, and knew the properties of gasoline; that during that time he had been overcome by gasoline fumes; that he noted the effects of gasoline fumes upon a girl who worked in his establishment cleaning clothes with gasoline, and that she was overcome and fainted while working for the witness. Another witness, Mr. Gibbs, also testified that the gasoline fumes affected him when he worked with or over gasoline, that he became unconscious, and that the effect was like becoming intoxicated. Mr. Harms, state chemist, also testified what effect the fumes of gasoline had upon him, but that he did not know from personal experience whether such fumes had ever affected others as they had him. Appellant's foreman, who, at and prior to the time of the injury, was in charge of its business, also testified that "before May 11th I had

heard of people being overcome by gasoline fumes under certain circumstances.   Q.   What conditions?   A.   Why, it may be that a man is very closely confined in a room where gasoline is used, where there is no current of air, that he might be overcome with the fumes, or it might affect him in such a way that it would make him dizzy, but that he would have plenty of time or warning to get out into the fresh air."   This witness, in his subsequent testimony, modified these statements and disclaimed notice.   It is contended that it was error to admit in evidence these isolated instances of the effects of gasoline fumes upon others because those few instances did not establish, nor tend to establish, that those who had charge of appellant's business had any knowledge of such effects, or such instances; further, that the few instances testified to did not constitute such a general condition upon the subject from which knowledge might be imputed to appellant.   It is conceded by appellant's counsel in his brief, stating it in his own language, that "if these alleged occurrences had taken place at the plant of the defendant, and the employees of the defendant had been apparently affected by the fumes of gasoline while engaged in working with it, evidence thereof would probably have been relevant and admissible upon the question of knowledge of the properties of gasoline and the effects of the fumes upon those employees."   The court in charging the jury limited the effects of the foregoing evidence in the following instruction:   "You are instructed that one or more individual instances of persons being overcome by the fumes of gasoline are not sufficient to establish a general knowledge of the dangerous effects to be anticipated from the inhalation of such fumes by persons having the ordinary mental and physical faculties and characteristics of human beings; nor are they sufficient to charge the defendant here with knowledge of such effects unless in fact known to it, and consequently with negligence because of its failure to anticipate and guard its employees against them."   Counsel practically concedes that this instruction limited the effect of the evidence, but suggests that the jury in all probability did not heed the charge.

We must, however, assume that the jury did follow the charge of the court, unless, in view of the whole record and the result reached, the contrary is made apparent. As we understand him, counsel insists that this is made apparent for the reason that the other evidence which was given upon the question of appellant's knowledge with respect to the effect of the fumes of gasoline upon persons is entirely unworthy of belief. Whether such was the case was, however, a question for the jury, and not for us.

There was some direct evidence before the jury that the person in charge of appellant's laundry business had knowledge of the effects of gasoline fumes, and that he possessed such knowledge before respondent was employed and before the accident occurred. If the jury believed this evidence, as they had a right to do, it was alone sufficient to sustain a finding that the man in charge of and who was responsible for the conduct of appellant's business had knowledge of the dangers incident to the fumes of gasoline when used in such quantities as appellant was doing, and when confined in rooms such as were used by it. We must assume that the jury followed the instruction given by the court, and in doing so did not consider the evidence relating to the isolated instances of the effects of the fumes of gasoline for the purpose of imputing knowledge thereof to the appellant. In view of this, there was no error in admitting the evidence in question; besides, as we shall see, it was admissible upon another issue. We have had less hesitancy in arriving at this conclusion because of other charges which the court gave in connection with the charge we have set forth.

In view of the other issue  mentioned, we are of the opinion that the admission of the testimony respecting the effects of gasoline fumes upon the individuals named was proper. When it is remembered that the appellant in its answer not only denied any knowledge of the effects of gasoline fumes upon persons, but went farther, and explicitly denied that gasoline fumes had the effects alleged by respondent, it then was incumbent upon him, just as the court charged the jury, to prove both the effects of

gasoline fumes upon persons and that the appellant had knowledge thereof, or to prove facts from which such knowledge could be imputed to it. It is true respondent might have produced experts, if such could have been found, who might have told the court and jury what the properties of gasoline are, and what the usual or ordinary effects of the fumes upon persons coming in contact with them are.

The question still remains, Was that the only method by which the effects that gasoline fumes have upon persons can be proved? If there were witnesses who had seen and observed the effects of such fumes upon themselves and others, why could not they give their knowledge and experience with regard to the effects observed by them? Does it require a chemist or one learned in the effects of gases upon human beings to tell us what the actions or conduct of certain persons under disclosed conditions were? After all, is it not true that all the witnesses told the jury was that whenever they and some other persons came in contact with gasoline fumes such fumes produced certain symptoms which could be seen and observed by all? In view, therefore, that appellant had denied that gasoline fumes had the effects alleged by respondent, or that such fumes had any deleterious effects upon persons, he had to prove, if he could, what he had alleged in this regard. This is just what respondent did by showing the effects gasoline fumes had upon other persons and upon himself. While it might require an expert to inform the jury what the precise properties of alcohol are, and in that connection might also tell them just what effect alcohol has upon the brain or other organs and thus upon the functions of such organs, yet we think no one would seriously contend at this late date that a layman may not testify to what effects he observed alchohol had upon himself as well as upon others who had used it, or who had come in contact with it as he had. It may, therefore, be quite correct, as counsel contends, that the showing of the effects of the gasoline fumes in a few instances was insufficient to charge appellant with notice of such effects, yet the effects of gasoline shown in those few

instances is some evidence relative to the effects, that such fumes had upon persons. In this regard counsel contends that the evidence, in order to make it proper at all, should have shown that the effects testified to were the effects that gasoline fumes have upon ordinary, or upon the "average individual," and, since the witnesses did not state that gasoline fumes affected the ordinary or average individual as it affected them and the others they saw in the several instances testified to, therefore the evidence was improper for every purpose. We cannot agree with this contention.

It is a presumption of law of universal application that individuals of both sexes are presumed normal so far at least as natural functions of the body or organs are concerned until the contrary is made to appear. If, therefore, certain gases or fumes emanating from any liquid or other substance, when coming in contact with a person, have certain effects upon the brain or other organs of the body, and these effects are also shown to have occurred in a number of individuals, is it not fair to infer that all persons will be smilarly affected under like or similar circumstances? While such evidence no doubt is not conclusive upon the subject, yet it is evidence that may, and ought to, be considered. Counsel's contention that the evidence was improperly admitted because it was not shown that the effect of the fumes was had upon persons who were surrounded by similar conditions that respondent was is not tenable. While the evidence in this regard might have been more specific, yet we think it is clear that in all cases save one the persons affected were shown to have been more favorably situated to escape the effect of the fumes than was the respondent at and just preceding the accident. We think the jury were justified in assuming that the individuals who were affected were normal, and that like or similar effects would manifest themselves in other normal individuals. We are of the opinion that the mere fact that the respondent was some years younger than the others who were affected by the fumes cannot change the rule to any appreciable extent. At any rate, the difference of age, and what, if any,

effect this should have, in the absence of any evidence upon the subject, is a matter not to be arbitrarily controlled by the court, but must be left to the jury to be determined, like many other matters, as best they can in view of all the evidence before them.

The next is group B, and this group is covered by counsel in the following language: "The court erred in admitting the testimony of the witness Harms as to the properties of gasoline and the effects of inhaling its vapors upon the human system." This witness was an experienced chemist and legally qualified to testify as an expert in chemistry. He was asked whether from his experience and study he could tell what the effects of gasoline fumes were upon the human system. He answered: "The primary effects are a slight headache, then followed by a sense of dizziness, and that is followed usually by numbness, a gradual loss of senses, and, of course, as the stage progresses, a weakness and complete loss of senses; in other words, a person becomes insensible. Up to this point is my own personal experience, in my work with gasoline, of which I do a great deal for the Oregon Short Line Railway, and testing gasoline, and also in other work in my laboratory." The substance of the objection to this testimony is that the effect testified to by the witness is limited to himself, and does not, as it should, give what effect, if any, gasoline fumes have upon persons generally: This is no doubt true; but if we are right with respect to what we have said upon the preceding group of errors, then this group must follow the preceding one.

The mere fact that the witness might perhaps have given his opinion of the properties of gasoline and have given the effect of its fumes upon a normal human being when coming in contact with such fumes did not, for the reasons we have given, disqualify him from stating what the effects of the fumes were upon him.

The next in order is group C. This group, however, is not argued, except in connection with group D, which, giving it in counsel's own language, is as follows: "The court erred in refusing to direct a verdict for the defendant and in over-

ruling the motion for a new trial. The verdict is contrary
to law and paragraph one of the charge." In this group coun-
sel discusses various propositions. We will consider the con-
tention that the verdict is contrary to law and paragraph
one of the charge first. This contention is, in our opinion,
not tenable. In view of all the evidence, we think the ques-
tion of whether appellant is liable or not is one of fact.
Counsel does not complain that the court did not properly
and correctly charge the jury with regard to the law ap-
plicable to the facts. We have carefully examined the whole
charge, and from it we are convinced that the court fully pro-
tected the legal rights of appellant. Indeed, it is not so
clear that the court did not go farther in some instances in
protecting the appellant than the law justifies. Nor do we
think that the verdict is contrary to paragraph one of the
charge. We are convinced that there was some evidence of a
substantial character in favor of respondent upon every ele-
ment contained in said paragraph. This being so, we are
precluded from interfering with the verdict. Nor do we
think the court erred in refusing to direct a verdict for ap-
pellant. Under this head counsel specially calls our attention
to certain features of the testimony of certain witnesses, in-
cluding the respondent, and to the improbability of the truth-
fulness of some statements made by them in view of certain
circumstances disclosed by the record.

Counsel recognizes the law of this jurisdiction that, where
there is any substantial evidence in support of every essential
fact which is necessary to be established to entitle a recovery,
we are powerless to interfere, although in our judg-
ment, if we passed on the facts, the verdict should
have been otherwise, or is against the weight of the
evidence. Counsel, however, urges that, in view of the
whole evidence, we should say as a matter of law that some
of the statements made by some of the witnesses cannot be
considered, and hence the question confronting us is as
though there were no evidence upon a material issue in the
case. For instance, counsel argues that, in view of the cir-
cumstance just alluded to, there is no evidence that appel-

lant had any knowledge respecting the dangerous character and effect of the fumes of gasoline upon persons coming in contact with it in its business of dry cleaning. While upon this point the evidence in our judgment is inconclusive and not as satisfactory as it might be, yet there is some substantial evidence in the affirmative upon the proposition. If we are right in this conclusion, and we are convinced that we are, then the whole question, disguise it as we may, simply resolves itself into our passing upon what witnesses are to be believed and what, if any, weight should be given to particular evidence or statements made by some witness or witnesses.

This we cannot do. We cannot interfere in cases that are doubtful with regard to the facts any more than we can in cases that are clear upon the facts. The test is as to whether there is any substantial evidence upon every material issue which must be established in order to authorize a recovery. If there is, we, like the losing party in the 7 case, must submit to the verdict, although like he, we might think it should have been the other way. Nor did the court commit any legal error in refusing to grant a new trial. While the trial court in the discretion vested in it might, perhaps, have been justified in granting a new trial upon certain features of this case, yet the record is not such as discloses an abuse of discretion in that regard.

There being no abuse of discretion therefore, and no errors of law, but one result is permissible, and that is, that the judgment should be affirmed. It is so ordered. Costs to respondent.

McCARTY and STRAUP, JJ., concur.