State v. Ellison, 19 N. M. 428

---

[No. 1594, October 27, 1914.]

STATE OF NEW MEXICO, Appellee, vs. A. ELLISON,
Appellant.

### SYLLABUS BY THE COURT.

1.  In a prosecution for rape, when details of the woman's
·complaints to others have been elicited on cross-examination,
these details may be more fully developed on redirect exam-
ination.

P. 434

2.  The complaints of an outraged female may, or may not,
be a part of the res gestae of the offense. The fact that the
·details of a complaint are elicited from an outraged child by
·questions does not necessarily rob it of its voluntary character.
In this case the recital of this child prosecutrix to her mother
·and others within ten minutes after the commission of the of-
fense, although given in response to questions, held to be vol-
untary and admissible.

P. 438

3.  A physician testified as an expert that the ordinary

male organ could produce such a condition as was found present in the prosecutrix. **Held,** the evidence was properly admitted.

P. 439

4. Defendant closed his case without testifying, and the prosecution dismissed three witnesses held in reserve for rebuttal of his testimony who had left town. The next morning defendant moved to reopen the case for the purpose of testifying. **Held,** the court properly refused to reopen the case under the circumstances.

P. 441.

5. A motion for an instructed verdict, based upon an erroneous view of the law, was properly overruled.

P. 441

6. Where no foundation for impeachment of a witness is laid on cross-examination, impeaching evidence in rebuttal is properly excluded.

P. 442

7. Under a statute prescribing a certain penalty for a certain offense, it is not necessary for the court to inform the jury as to the statutory penalty, the sole question for the jury being whether the defendant is guilty or not guilty.

P. 442

8. Instructions to the jury are to be considered as a whole and where, so considered, they fully protect the defendant, he cannot complain.

P. 442

9. Where an assignment of error presents an objection to an instruction to this court which was never presented to the court below, the party can have no relief here.

P. 443

10. A definition of a reasonable doubt in the following

terms: "A reasonable doubt is such a doubt as would cause a reasonable and prudent man to pause and hesitate to act in the graver and more important affairs of life, but a reasonable doubt is not merely a possibility of innocence, nor a speculation as to the innocence of the defendant not arising out of the evidence in the case or the want of it"—held to be unobjectionable.

P. 445

11 An objection to an instruction not carried forward in the motion for a new trial presents no ,question for review here.

P. 445

12. Failure to make outcry. by a female does not, as a matter of law, raise a presumption that no outrage was committed. The most that can be said of it is, that it is a circumstance for the consideration of the jury in determining the truth.

P. 446

13. Independent of statute, a man may be convicted of rape upon the uncorroborated evidence of a strumpet or a girl under ten years of age. New Mexico cases reviewed.

P. 447

14. Assignments of error not argued will not be considered.

P. 450

Appeal from District Court, Chaves County; John T. McClure, Presiding Judge. Affirmed.

W. W. GATEWOOD and C. O. THOMPSON, for appellant.

Evidence.. 3 Ariz. 288; 139 Cal. 103; 66 Pac. 202; 91 Pac. 1013; 52 Pac. 307; 32 Pac. 8; 6 Pac. Rep. 691; 7 Pac. Rep. 37; 33 Ia. 420; 45 Ala. 80; 76 Ala. 29; 5 S. W. 517; 15 Ark. 624; 113 S. W. 346; 41 So. 466; 38 So.

State v. Ellison, 19 N. M. 428

1019; 51 So. 107; 7 Pac. 37; 66 Cal. 597; 21 Cal. 261; 25 Fla. 702; 97 Ga. 792; 11 Ga. 225; 13 Id. 317; 10 Id. 18; 44 N. E. 856; 124 Ill. 576; 38 Ind. 39; 32 Ind. 81; 138 Ia. 113; 129 Ia. 484; 106 Ia. 99; 69 Ia. 294; 33 Ia. 420; 96 Pac. 138; 63 Pac. 695; 40 Am. St. Rep. 277; 58 Am. Rep. 201; 85 Me. 106; 125 Mich. 376; 89 Mich. 86; 39 Minn. 276; 89 Miss. 643; 38 So. 776; 35 So. 202; 33 So. 174; 198 Mo. 212; 174 Mo. 607; 82 Pac. 509; 38 So. 907; 12 So. 176; 9 So. 577; 1 So. 448; 90 Mo. 54; 17 Atl. 118; 168 Mo. 480; Whart Crim. Ev. Secs. 262-263; 22 Tex. App. 273; 58 Am. Rep. 181; 7 N. M. 428; 2 Id. 83; 34 Pac. 715; 25 Kan. 349; 74 Ia. 509; 30 Pac. 115; 20 So. 904; 136 Ind. 284; 45 Ala. 80; 89 N. W. 363; 20 S. W. 710; 6 Cal. 221; 10 N. M. 778; 56 Pac. 81; Cooley's Blackstone, Vol. 2, p. 212; 72 Pac. 838; 71 N. E. 389; 101 N. W. 189; 19 Am. St. Rep. 387; 74 S. W. 969; 71 Pac. 162; 210 Ill. 410; 101 N. W. 189.

Court erred in overruling defendant's various motions to strike from record evidence of witnesses relative to details and statements of prosecutrix and bearing upon alleged complaint. 2 Park Cr. (N. Y.) 663; 76 S. W. 115; 108 Mich. 361; 2 Neb. 157; 81 Ia. 380; 118 Cal. 349; 41 Fla. 547; 30 Fla. 256; 108 Mich. 361; 100 Mo. 347; 130 Ala. 18; 62 Ala. 434; 76 Cal. 328; 96 Mo. 364; 51 Neb. 301.

Opinion of physician. Wharton & Stille's Med. Jur., p. 580; 40 Mich. 90; 62 Bar. 364; 88 Mich.; 16 L. R. A. 437; 208 Ill. 608; 60 Ia. 172; 37 S. E. 938; 57 Hun 123.

Abuse of discretion on part of court. 94 Ill. 142; 51 Ill. 288; 10 N. C. 308; supra; 59 Miss. 561; 20 Mo. 603; 44 Mo. App. 148; 50 Hun 602; 94 Ill. 142; 27 Ga. 382; 73 Ia. 384; 50 Mo. App. 312.

Not sufficient competent evidence to support verdict of guilty. 43 Pac. 772; 45 Pac. 813; 101 Cal.; 9 Pac. 42; 24 Pac. 965; Ga. Dud. 213; 50 Ga. 513; 21 Neb. 492; 12 Tex. App. 51; 24 S. W. 99; 2 N. M. 459; 39 Cal. 689; 57 Ga. 482; 85 Ga. 535; 33 Ga. 571; 95 Ga. 460; 30 Ia. 251; 44 Tenn. 175.

It is province of court to instruct jury as to law of case.

21 Pac. 152; 167 Ill. 443; 6 So. 391; 83 Ill. 150; 2 So. 357; 59 Ind. 105; 89 N. W. 128; 24 N. E. 874; 32 N. E. 966; 94 U. S. 610; 30 Cal. 158; 16 Cal. 137; 17 Cal. 146.

If evidence fails to establish allegations beyond reasonable doubt. 43 Ill. App. 83; 51 Ill. App. 225; 38 Ill. 164; 12 Cyc. p. 600; 87 Ala. 80; 82 Ala. 8; 89 N. W. 128.

Corroboration. 100 Pac. 153; 119 N. W. 461; 116 N. W. 1085; 100 Pac. 269; 86 Pac. 187; 58 N. E. 75; 31 Ind. 492; 58 Ind. 293; 70 Ind. 375; 74 Ind. 60; 5 N. E. 898; 98 S. W. 705; 37 N. W. 630; 63 Ia. 464; 55 Ia.. 702; 63 Ia. 355; supra.

Ruling of court in refusing defendant's requested instructions. 47 Ia. 151; 100 Pac. 153; 119 N. W. 461; 116 N. W. 1085.

IRA L. GRIMSHAW, Asst. Atty. Gen., for the State.

### OPINION.

PARKER, J.—The appellant was tried and convicted for a violation of Section 1095, C. L. 1897, which is as follows:

"If any person shall unlawfully and carnally know and abuse any female child under the age of ten years he shall be punished by imprisonment in the county jail or territorial prison for life."

It appears from the record that the prosecutrix is a little girl nine years of age. On Sunday morning, May 12, 1912, appellant engaged the attention of this child prosecutrix in the lobby of the hotel by acts of ventriloquism. Some time thereafter, on the same day, before dinner, prosecutrix ascended to the second floor of the hotel for the purpose of going to her room, and in the hallway met the appellant who requested candy of her. She replied that she did not have candy, but had salted peanuts, and gave him some. Thereupon he took hold of her arm, caressed her, led her into a secluded part of the hallway, and then pushed her into his room and locked the door. He sat on the bed and placed the little girl there on his lap. Without much delay he prepared himself and the little girl for sexual intercourse and then accomplished his purpose.

Immediately after being released from his embrace, and as soon as she could effect her escape, she ran from the room where she had been, and ran across the hallway to her own room which was occupied by herself and twin sister. She immediately locked the door. The prosecutrix then divulged some of the details of the crime, in response to questions as to why she had locked the door, to her twin sister, and a little playmate and a lady who was chambermaid in the hotel. This information was divulged within ten minutes from the time the act occurred. The chambermaid, upon hearing some of the details, directed the girls to their mother. The details were there related in part to the mother by the prosecutrix. A physical examination of the prosecutrix that day, revealed signs of an act of rape.

The defendant did not testify. He produced evidence of good reputation, and evidence of the size of his genital organ and that he could not have done the act charged without having caused more damage than was apparent on the person of the prosecutrix. There was no denial that he was at the hotel at the hour the crime was alleged to have been committed; there was no evidence that he did not go upstairs, as stated by the prosecutrix, and no direct evidence that he did not commit the crime charged. Appellant closed his case without testifying in his own behalf, and then sought to reopen the case for the purpose of testifying, which application was refused by the court, on account of the absence of witnesses for the state, who, when the case was closed, had been excused by the district attorney from further attendance and who had left town.

Appellant assigns error on the ground that the details of the complaint of the prosecutrix to her mother and others of the alleged outrage upon her, was allowed to be given in evidence. It appears from an examination of the record that on direct examination of the prosecutrix no details of her complaint as to the alleged assault, were developed. The examination was devoted to the demonstration of the fact that she made complaint shortly after the alleged assault. On cross-examination, however, many of the details of her complaint to her mother and others were developed. Thereupon, upon redirect examination by the

state, these details were more clearly developed. Under such circumstances, appellant can have no exception. It would be a strange doctrine that a defendant may ask for the details of a complaint made by a prosecutrix in such cases, develop such portions thereof as he may desire, and then close the mouth of the prosecution, often thereby leaving the witness in an embarrassed or discredited attitude before the jury. This would violate the fundamental rules of evidence, designed as they are to elicit the truth. That after details of complaints in such cases have been developed on cross-examination they may be fully developed on re-direct. See Territory v. Maldonado, 9 N. M. 629-633, 58 Pac. 350; State v. Fowler, 13 Idaho, 317, 89 Pac. 757; Note to Rogers vs. 88 Ark. 451, 115 S. W. 156, 41 L. R. A. (N. S.) 857-886; 1 McClain, Cr. Law, sec. 456; 4 Chamberlayne, Mod. Law Ev. sec. 3039.

An interesting discussion of the principles upon which evidence of complaints made by an outraged female are admissible, is to be found in 2 Wigmore on Evidence, secs. 1134-1140. He says:

"There are three possible principles, well enough established otherwise, upon which such evidence can be offered: (1) As an explanation of a self-contradiction; (2) as a corroboration by other similar statements, under the present principle; (3) as a *res gestae* declaration excepted under the hearsay rule." Id. sec. 1134.

"Now, when a woman charges a man with a rape, and testifies to the details, and the accused denies the act itself, its very commission thus coming into issue, the circumstance that at the time of the alleged rape the woman said nothing about it to anybody constitutes in effect a self-contradiction of the above sort. It was entirely natural, in this situation above all others, that she should have spoken out. That she did not, that she went about as if nothing had happened, was in effect an assertion that nothing violent had been done. * * * As a peculiarity, therefore, of this kind of evidence, it is only just that the prosecution should be allowed to forestall this natural assumption by showing that the woman was not silent, i. e., that a complaint was in fact made." Id. sec. 1135.

In regard to the second principle he says:

"The details of the statement are admissible. Since the purpose is to show that she tells the same story as on the stand, the whole of the complaint as made by her, with its terms and details, is to be received, and not the mere fact of the complaint. * * * According to the general theory of corroboration by similar statements, there must be some kind of impeachment before the other statement can be offered. * * * The kind of impeachment, therefore, which will be sufficient to admit the rape complaint will depend on the view taken of the general principle in the particular jurisdiction." Id. sec. 1138.

Under the third principle he says:

"One of the exceptions to the hearsay rule permits the spontaneous declarations of a person suddenly excited by an extrinsic occurrence to be admitted as hearsay testimony. The declarations of a woman under the fright of a sudden assault have been regarded by some courts as receivable under this exception." Id. sec. 1139.

He summarizes the doctrine as follows:

"I. The fact of the complaint is always and legitimately admissible under the first theory above. (2) The details are legitimately receivable under either the second or the third theory; but the third has little vogue, while the second is widely accepted. Each has its own logical requirements, different from the other. (3) Both the first and the second theories may be accepted, without conflict. In most jurisdictions, the first theory is used to admit the fact of complaint, and then the second theory is invoked to admit the details; and this is proper, if the conditions of the second theory are observed." Id. sec. 1140.

Counsel urges that the complaints were inadmissible for two reasons, viz. (1) They were made in answer to questions and were, consequently; not voluntary; and (2) they were not made under such circumstances as to be a part of the *res gestae*. The second point is easily disposed of. The complaint of the outraged woman may be or may not be part of the *res gestae*. When they are, they may be given in evidence with all the details. There the fact speaks through the person acting. But more often the

complaint must, necessarily, not be a part of the *res gestae,* and must be a mere narration of past events, in which case it is admissible on an entirely different principle, as pointed out by Mr. Wigmore, supra.

At to the first objection, above noted, counsel for appellant cites several cases, but an examination of these cases will disclose that they have no application. In People v. Wilmot, 139 Cal. 103, 72 Pac. 838, the witness was asked on direct examination:

"Did she say whether or not this defendant had had sexual intercourse with her?" Over objection, the witness answered. "She did speak about it." Q. "Did she say that he had?" A. "She did say that he had on the 9th of May."

In this case the details were developed on direct examination which was contrary to all of the authorities.

In Cunningham v. People, 210 Ill. 410, 71 N. E. 389, the recital made to the probation officer, three weeks after the occurrence was held not to be a complaint because the girl did not in fact complain, had never mentioned the matter to her mother, but was giving a mere recital without complaint.

In State v. Bebb, 125 Iowa, 494, 101 N. W. 189, the girl did not complain to any one for four months, and then, upon the insistence of her grandmother, made explanation of her pregnancy by accusing the defendant. The court said:

"It was an explanation, therefore, and not a complaint any more than was her statement made to the grand jury upon which the indictment against the defendant was predicated."

In State vs. Pollard, 174 Mo. 607, 74 S. W. 969, the girl did not complain, but an account of the affair was extracted from her by a friend at a time too remote to be a part of the *res gestae,* and the statement was held to have been, on that ground, erroneously admitted. This case would seem to be out of line with the current of authority as intimating, if not deciding, that a complaint of a prosecutrix, to be admissible, must be a part of the *res gestae.*

Counsel cites also, State v. Perez, 27 Mont. 358, 71 Pac. 162, but it is an authority against the contention made. There the little girl was outraged on Friday, and on Mon-

day following cried and was nervous at school, and was in the same condition on Tuesday, and on Wednesday told her teacher, at the teacher's request to know what was troubling the girl. The court held the statement to be a complaint, and to be not involuntary.

The true rule on the subject of complaint seems to be well stated in State v. Dudley, 147 Iowa, 645, 126 N. W. 812:

"But the circumstance that her statements were in response to questions did not necessarily rob them of their character as complaints. * * * When an outrage is committed on a female, the instincts of her nature prompt her to make known her wrongs, and to seek sympathy and assistance. It is the natural expression of her feelings, and is received in evidence as tending to corroborate her credibility. * * * Of course answers to questions involuntary in character are not to be regarded as complaints, but as mere recitals of what is claimed to have happened. * * * But the prosecutrix was laboring under no compulsion, and her manner as disclosed by Bishop's testimony was such as to indicate that she was giving free expression to the indignity and wrong which had been done her. The court rightly received the evidence; the circumstances being for the jury's consideration in determining what weight should be given it."

The principle upon which these complaints are to be admitted is that no self-respecting woman, after an outrage of this kind, can refrain from proclaiming the same to some friend, and from seeking such aid and comfort as the circumstances will admit of. If she remains silent, except in exceptional circumstances, the inference is strong that the outrage was not in fact committed. It is in anticipation of these inferences that she may rebut the same on direct examination by giving in evidence the fact of her complaint.

In statutory rape, where the offense consists in having sexual intercourse with a female under statutory age, the offense may be either with or without the female's consent in fact. If without her consent, the principle above stated would seem to fully apply. If with her consent, then the

State v. Ellison, 19 N. M. 428

question as to whether the statements are voluntary or not most frequently arises. If a female under statutory age in fact consented to the act, and has in fact no complaint in her heart against the man, and, at the insistence of relatives to account for her condition, accuses some man of the act, her statements must be of little or no probative value, and are not sanctioned by the above principle. They do not spring from the outraged feelings which a good woman must have under such circumstances. They often must be untrue, designed to ensnare some available victim for an enforced matrimony. In the case of a child, as in this instance, still other considerations come in view. The true moral aspect of the subject-matter may be only dimly, at least not fully, understood by the victim. She may not, in the absence of acute pain or discomfort, feel moved to complain of the outrage and she may only show excitement, strange or unusual actions, or other manifestations, the direct effect of the diabolical act which has been committed against her. She feels that some terrible evil has overtaken her, but its true character is not fully understood. Can it be said that, under the circumstances, a statement made to her mother, sister or friend, in answer to inquiries to account for her unusual manifestations, and without threat or compulsion, is involuntary? We think not, and so hold.

The whole doctrine is founded upon the idea that a woman will naturally do and act in a certain way under such circumstances. If she remains silent, her silence amounts to an act inconsistent with her statement charging rape, and renders the charge doubtful. What a woman would naturally do or say under such circumstances must depend upon her age, temper, moral character, intelligence, or perhaps other characteristics, as well as her surroundings. A complaint obtained from a child by questions may be entirely voluntary, while a complaint obtained from a mature woman in the same manner might be entirely involuntary. The question is, always, did the woman intentionally ,willingly and without compulsion complain? And in this case this child ran from the room where she had been assaulted, ran into her own room and

locked the door. Her twin sister asked her why she had locked the door, and she finally told her sister and a little playmate, and within ten minutes, she says, sought her mother, although at the chambermaid's suggestion, and told her a few details, and shortly thereafter, at the request of the mother to know if she had told all, she fully disclosed the details of the crime. Such a complaint, under such circumstances, by a child, is a voluntary complaint.

Counsel assign error for failure to strike out the same class of testimony and of course they will be overruled for the reasons above pointed out.

A physician was testifying and the following occurred:

"Q. Would the ordinary male produce such a condition as you found in (the girl), could an ordinary male adult produce such a condition as you found with his penis in a girl nine years old? A. It could."

Counsel after objections to the question and answer on some more general ground, further objected as follows:

"Our objection further is that it is not founded on facts proven in the case; First, it is not founded on the size, the relative size, of the organ of the male in this case, or that the question is not founded on the size or relative size of the female organ in this case."

Counsel for appellant argues and cites authority to the effect that it is incompetent for an expert to testify that a certain condition was produced by a certain instrument or act. Both the argument and the authorities are inapplicable. This witness did not testify that the condition which he found in the girl was caused in any particular way. He merely testified that the condition could have been caused by such means. We see no objection to this evidence.

Counsel, however, by the latter objection above quoted, raised an interesting question, but they do not argue it here, or cite authority. It is this: to what extent does the inference of regularity and uniformity avoid the necessity of proof of individual characteristics of body or mind?

Mr. Chamberlayne says on this subject:

"There is, however, frequently found a strong element of actual probative force in connection with the physical,

mental or moral attributes of human beings. Each individual possesses or is possessed by the ordinary physical, mental or spiritual qualities by which men as a class are generally influenced." 2 Chamberlayne, Mod. L. Ev. sec. 1050, citing Holcombe v. State, 5 Ga. App. 47, 62 S. E. 617.

And in 9 Ency. of Ev. 894, it is said:

"In the absence of circumstances showing the contrary, a person is presumed to be in the possession of their normal faculties of the mind and body" (citing Green v. So. Pac. Co., 122 Cal. 563, 55 Pac. 577).

In Harris v. Ogden Steam Laundry Co., 39 Utah, 436, 444, 117 Pac. at 700, 704 (Ann. Cas. 1913E, 96), it is said:

"It is a presumption of law of universal application that individuals of both sexes are presumed normal so far at least as natural functions of the body or organs are concerned, until the contrary is made to appear."

As before stated, this proposition is not argued by counsel and it would be improper, perhaps, for the court to attempt to define the exact limits of its application.

The case was formally closed by both sides without the defendant having testified in his own behalf. The following morning the defendant moved to reopen the case so that he might testify. The motion was upon the ground that the defendant had yielded to the advice of his counsel on the evening previous, but upon more mature reflection overnight, he had concluded that such course would be prejudical to him. Thereupon the district attorney objected for the reason that when the case was closed he had discharged three witnesses held by him for rebuttal of defendant's testimony, that they had left Roswell on the train and that their whereabouts were unknown. The court denied the application for that reason. It is conceded that the court's action rested in discretion. It is claimed that there was an abuse of discretion amounting to error. We do not so understand the record. The trial judge had opportunity to observe the defendant, to feel and sense the atmosphere of the defense as well as the prosecution, and to know, better than we can, whether the application was, in fact, made in good faith. And even if it was in good·

faith, so far as defendant was concerned, it amounted simply to a statement that in defendant's opinion, as a matter of tactics, his counsel had made a mistake in persuading him not to testify. His counsel did not claim or admit that they had made a mistake, but they merely presented his claim to that effect. Defendant did not say in his motion that he had facts in his possession which the jury ought to know, in order to arrive at the truth. He simply said in effect, that he ought, in his opinion, to testify in the case for fear of adverse inferences to be drawn by the jury from his failure so to do. But even if the application had been in form calculated to move the court's discretion, still he was proposing to put the state at great disadvantage on account of the absence of witnesses. In such case, the fault was his, and he must suffer the consequences. To hold otherwise would be to allow defendants to jockey for place, to put tactics above the truth, and to consign justice to ignominious defeat. The discretion of the court was properly exercised.

This case presents a record in marked contrast to that in State v. Garcia, 143 Pac. 1012, 19 N. M., recently decided. In the Garcia case the defense relied upon the simple statement, in the motion for a new trial, that the verdict was contrary to the evidence, never having moved for an instructed verdict. On the contrary, in this case, at the close of the state's case, defendant moved for a directed verdict, and distinctly pointed out the reasons therefor, and preserved the same in full detail in the motion for a new trial. This is as it should be, and preserves the point for review here. Unfortunately for the defendant, however, the point is not well taken. The motion for an instructed verdict was based entirely upon the proposition that the complaint of the prosecutrix, being made in response to questions, was not in fact a complaint, and furnished no corroboration of her. This was a mistaken view, as before seen.

Counsel points out several features of the evidence which it is claimed by him demonstrate that the verdict is not supported by any sufficient evidence. It will be sufficient to say in this connection that we have carefully examined

all of the evidence, and it produces upon our minds exactly the contrary effect from that which counsel extracts from the same.

Counsel sought to elicit from a former waiter at the hotel that it was the custom of the father of the girl to keep prostitutes in the hotel which he and the girl's mother were keeping. The evidence was excluded on the objection of the district attorney. The offer was made for the purpose of reflecting on the credibility as witnesses of the father and mother of the girl. No foundation had been laid upon cross-examination for the proof. Even if admissible at all, this fact authorized its exclusion. The evidence was incompetent for another reason, viz., it tended to show, not general reputation for bad moral character, but specific acts of immorality.

Counsel complains of the action of the court in giving its third instruction. The statute under which this prosecution was instituted has been heretofore quoted. The instruction complained of is as follows:

"If any person shall unlawfully and carnally know and abuse any female child under the age of ten years, he shall be punished as provided by law."

The point is made that it was error not to inform the jury that the punishment prescribed by law was imprisonment for life. No authority is cited, and we are at a loss to understand the contention. In this jurisdiction the jury have nothing whatever to do with the question of punishment. Sections 1189 and 3405, C. L. 1897. The sole question is whether the defendant is guilty or not guilty of the charge. It was no concern of the jury what punishment the law prescribed.

Appellant complains of instructions Nos. 9 and 10, in which, respectively, are defined the words "carnally know" and "abuse." Counsel argues that these two instructions authorized the jury to convict if they believed the defendant "abused" the child, although they might not believe he "carnally knew" her. This is a mistake. In instruction No. 4, the court plainly instructed the jury that the defendant must both "carnally know" and "abuse" the girl before he could be convicted.

In instruction No. 11, the court instructed the jury that the defendant could not be convicted upon the uncorroborated evidence of the prosecutrix, but that he might be convicted upon her testimony and corroborating facts and circumstances, testified to by other witnesses. The instruction was excepted to in general terms, without specifying the error complained of. In the motion for a new trial appellant complained of the instruction because it was in words not the most favorable to the defendant. In this court, however, the appellant for the first time complains of the instruction as invading the province of the jury by assuming facts, (that there were corroborative facts and circumstances), and entirely abandons his theory set out in his motion for a new trial. In this way appellant presents a question to this court which has never been decided by the court below, and upon the authority of Territory v. West, 14 N. M. 546, 99 Pac 343, the objection is not available.

Appellant complains of instruction No. 5, which directs the jury that they must believe from the evidence beyond a reasonable doubt in the truth of each of the material allegations of the indictment, and if they have a reasonable doubt as to the truth of any of such allegations it will be their duty to acquit the defendant. He excepted to this instruction in general terms without pointing out any alleged error. In the motion for a new trial, the objection to this instruction is in general terms without pointing out any specific error. In this court the objection to this instruction, suggested here for the first time, is that the instruction authorized the finding by the jury not based upon proof. We fail to understand this argument. The instruction given required the jury to find the guilt of the defendant, if at all, upon proof. It did authorize them, perhaps, to acquit the defendant by reason of considerations other than proof, because it omitted, in the latter half of the instruction, to require the jury to found any doubt they might have of defendant's guilt upon the proofs in the case. This rendered the instruction more favorable to the defendant than he was entitled to. He certainly is not entitled to complain of such an instruction. Territory v. Gallegos, 17 N. M. 409, 130 Pac. 245.

In instruction No. 12, the court instructed the jury that if the prosecutrix told her mother and others of the assault upon her at the earliest opportunity, that this would be a corroborative circumstance, tending to sustain the truth of her statements as made upon the stand. The exception to the instruction is in general terms, and the alleged error in the instruction is not pointed out. In the motion for a new trial the objection to the instruction is pointed out as consisting in the fact that the prosecutrix must not only have told her mother and other persons, but in order to be a corroborating circumstance she must have made a complaint to her mother or other persons, and that the complaint must be a spontaneous outburst of enraged feeling and must have been voluntarily given. In this court the objection to the instruction is put upon an entirely different ground, viz., that the question whether testimony is corroborative or not is a question for the jury, and their province must not be invaded by the court, and that the corroboration must be by extrinsic evidence, by independent evidence. No such question was presented to the trial court, and of course the error, if it was error, is not available here.

The Attorney General cites Territory v. Edie, 6 N. M. 555, 30 Pac. 851, as authority for the correctness of the instruction as given, with which we agree. If the question were before this court, therefore, we would hold the instruction to be correct.

The court instructed in instruction No. 16, as to the extent of the penetration necessary to constitute carnal knowledge. The defendant excepted to the instruction on the ground that the degree of penetration was not properly explained to the jury. In the motion for a new trial he objected to the instruction on the ground that the court had told the jury that penetration, however slight, was sufficient to constitute the offense. In this court the objection to the instruction is that it failed to define the word "penetration." It thus appears that an entirely different question is presented from any that was presented in the court below, and as we have before seen, such a question is not available in this court under such circumstances. The defendant failed to request of the court an instruction de-

fining penetration, and of course he cannot complain here. State v. Cipriano Garcia, et al., 143 Pac. 1012, decided this term. The instruction as to the degree of penetration was correct. 2 Bishop's New Crim. L. sec. 1132.

We are at a loss to understand the objection to the fifteenth instruction. This instruction required the jury to believe beyond a reasonable doubt that penetration had occurred; otherwise they were to acquit. The court in other parts of the instructions required the jury to find all the material allegations of the indictment to be sustained by the evidence beyond a reasonable doubt.

Objection is made to the definition of reasonable doubt in the nineteenth instruction. It was given in the following language:

"A reasonable doubt is such a doubt as would cause a reasonable and prudent man to pause and hesitate to act in the graver and more important affairs of life, but a reasonable doubt is not merely a possibility of innocence, nor a speculation as to the innocence of the defendant not arising out of the evidence in the case or the want of it."

We see no objection to this instruction. A much less comprehensive one was sustained in Chavez v. Territory, 6 N. M. 455-463, 30 Pac. 903. The instruction is sanctioned on authority in Brickwood's Sackett Ins. Sec. 2647.

Objection is made to the twenty-fourth instruction, which submitted to the jury, with the instruction, the indictment "for your guidance as to the issues" The exception to this instruction was general and specified no grounds. This objection is not carried forward into the motion for a new trial, and hence presents no question for review here. U. S. v. Cook, 15 N. M. 124, 103 Pac. 305; Duncan v. Holder, 15 N. M. 322, 107 Pac. 685; State v. Garcia, decided this term.

Appellant complains of the refusal of the court to give his third and fifth requested instructions. He complains of the refusal to give other instructions requested, but does not argue the questions, and they may be dismissed from further consideration.

Requested instruction No. 3 is as follows: "If the jury

believe, from the evidence, that at the time of the alleged rape other people were, at the same time, in the same house, who might easily have heard her had she made any outcry, and that she in fact made no outcry at the time it is alleged that the defendant was committing the crime as alleged in the indictment, these facts will tend to raise a presumption that no rape was committed upon her at the time."

As to this instruction it may be said, that it was properly refused because it is erroneous as a matter of law. Failure to make outcry in a case like this, where there was no excessive force used, and where the girl was of such tender years as not to appreciate fully what was being done to her, does not raise a presumption that the act was not committed. She may have, in fact, consented in so far as she was capable of so doing. The most that can be said of the failure to make outcry in such a case is that it is a circumstance for the consideration of the jury in determining the truth as to whether sexual intercourse was had by the parties. A case cited by counsel (State v. Hagerman, 47 Iowa, 151.) has no application. In the first place, it does not decide what it is cited for, and in the second place, in that case, as near as can be ascertained from the opinion, force was used. In such case the court says the better practice is to call the attention of the jury to the fact of outcry, or absence of it.

In instructions Nos. 11 and 12, given by the court, he directed the jury that the defendant could not be convicted upon the uncorroborated evidence of the prosecutrix, and further instructed that if the jury believed that the prosecutrix told her mother or other persons of the assault upon her at the earliest opportunity, that this fact would constitute corroboration of her testimony. In requested instruction No. 5, counsel for defendant took the position that, likewise, the testimony of the prosecutrix must be corroborated, but that such corroboration must be of such character as, standing alone and without the aid of the testimony of the prosecutrix, tends to connect the defendant with the commission of the crime. In other words, the proposition was advanced that corroboration

must come from some other source than the prosecutrix herself, and that, consequently, her own complaints would not be corroboration. Counsel cites authority to that effect from the states of Washington, Iowa and Nebraska. See State v. Stewart, 52 Wash. 61, 100 Pac. 153, 17 Ann. Cas. 411; State v. Simmons, 52 Wash. 132, 100 Pac. 269; Mott v. State, 83 Neb. 226, 119 N. W. 461; State v. Ralston, 139 Iowa, 44, 116 N. W. 1058. The Attorney General has raised in this court no question in regard to the proposition that the testimony of the prosecutrix in cases of this kind requires corroboration. It thus appears that a mistaken view of the law was taken by the court below, and by counsel for appellant, and the Attorney General, in this court. The testimony of a prosecutrix in cases of this kind requires no corroboration. Corroboration is required in many of the states by statute. But in the absence of a statute a man may be convicted of rape on the uncorroborated testimony of a strumpet, or he may be convicted on the uncorroborated testimony of a girl below 10 years of age. 2 Bishop's New Crim. Proc. Sec. 968; 10 Ency. Ev. 600; 3 Wigmore on Ev. sec. 2061; 4 Elliott on Ev. sec. 3102; 33 Cyc. 1495; Trimble v. Ty., 8 Ariz. 273, 71 Pac. 932; Peckham v. People, 32 Colo. 140, 75 Pac. 422; Barnett v. State, 83 Ala. 40, 3 South. 612; State v. Dusenberry, 112 Mo. 277, 20 S. W. 461; State v. Lattin, 29 Conn. 389.

In this connection we have re-examined all of the New Mexico cases. In Territory v. Edie, 6 N. M. 555, 30 Pac. 851, it was held, among other things, that a woman's complaint at the earliest opportunity was a corroborating circumstance, tending to sustain the truth of her statements on the stand. This case, unless to be departed from, for which we see no reason, is authority for the instructions given in the case at bar.

In Territory v. Maldonado, 9 N. M. 629, 58 Pac. 350, the court held that the complaint giving the details of the outrage could not be given in evidence in the first instance.

In Mares v. Territory, 10 N. M. 770, 65 Pac. 165, some language is used which might be considered as supporting the doctrine that corroboration is required in all cases. In that case it was said:

"We are of the opinion that there is not sufficient evidence on the part of the prosecution to justify this conviction. There should be some corroborating evidence or circumstance, however slight, or a reasonable probability of the truth of the assault, to justify a verdict of guilty. There is not, in the whole case, any corroborating evidence, nor a single corroborating circumstance, and the probability of the commission of the alleged offense is so far outside of the domain of reason that there was absolutely nothing for the consideration of the jury except the bare improbable statement of the prosecutrix."

In that case there was an entire absence of timely complaint, entire absence of proof of resistance or force, the place was a public place and the room in full view of the street, and no outcry was made. All of the circumstances, not only failed to corroborate the witness, but they all tended to contradict her, and rendered it highly improbable that the offense was committed. We do not interpret the case as laying down an absolute rule of law that a prosecutrix must be corroborated in all instances. If she tells the truth, the surrounding circumstances come to her aid and support naturally and automatically. If she lies, manufactures a story, she can seldom, if ever, close all the avenues against detection and consequent overthrow. The bald statement of a woman in this regard must necessarily be connected with some surrounding circumstance which either tend to support or to contradict her. She must have been at the place designated by her. The man must have been there; she must retire from the place, and she must account circumstantially for these circumstances, or her statement ordinarily will receive no credence by reasonable men. She cannot separate herself from these circumstances if she would, and they are, when shown, corroboration of her statements, or a contradiction of the same. This is all that is decided by the court in Mares v. Territory, supra. In that case, the circumstances shown all contradicted the prosecutrix, so that there was such a want of substantial evidence as to require a discharge of the defendant.

In State v. Alva, 18 N. M. 143, it was assumed by this court, but not decided, that corroboration was necessary, but we held in that case, simply, that the prosecutrix was corroborated.

It is of course true, that in a sense, the testimony of a prosecutrix must be corroborated. That is, it must bring together a number of surrounding facts and circumstances which coincide with and tend to establish the truth of her testimony. Without such surrounding facts and circumstances, the bald statement and charge of a woman against a man would be so devoid of testimonial value as to render it unworthy of belief, and to cause it to fail to meet the requirements of the law, namely, evidence of a substantial character. In this sense there must, of course, be corroboration. In some of the states, by reason of the terms of the statute, corroboration must come from some outside source in the form of testimony of an independent character, disconnected from the testimony of the prosecutrix. It is not in this sense, in this jurisdiction, that the prosecutrix must be corroborated. It thus appears that the controversy between the court and counsel as to whether the complaints of the prosecutrix were corroboration, becomes immaterial. The instruction of the court gave the defendant more than he was entitled to have in the way of protection, in requiring the testimony of the prosecutrix to be corroborated. If the court erroneously instructed that corroboration might consist in the proof of complaints made by the prosecutrix to her mother and others, the error was harmless, because no corroboration of her was required. The question for the jury was, did the defendant commit the crime as charged? If they believed the evidence of the prosecutrix, they were authorized to do so, and convict upon it with or without corroboration.

As before stated, in many of the states they have statutes requiring corroboration. It may be, taking into consideration the character of the offense, the ease with which it may be charged, and the charge maintained, the difficulty of disproving the same, so often pointed out in the cases, that it is a wise legislative provision to require cor-

roboration. The fact remains, however, that we have no such legislation.

The remaining assignments are not argued, and will not be discussed.

In conclusion we wish to say that, owing to the severity of the punishment fixed by the law for this offense, the inherent improbability of the commission of such an offense upon a little girl by any sane and reasonable man, the danger of mistake in such cases, together with the insistence of counsel in their exhaustive briefs, we have been more than usually careful in the examination of the record. We have determined, as before seen, that no errors of law were committed by the court which are before us for examination, if, indeed, any were committed. This examination of the record has convinced us of the guilt of the defendant of this horrible outrage, and we unhesitatingly affirm the judgment, and, it is so ordered.