GATE CITY NATIONAL BANK, Appellant, v. J. H. BOYER, Defendant; Z. M. BOYER, Interpleader, Respondent.

Springfield Court of Appeals, January 8, 1912.

1. **ATTACHMENT: Interpleader: Sufficiency of Evidence: Instructions.** In an attachment suit, where two promissory notes and a deed of trust securing them, were seized under the writ of attachment, the respondent appeared and interpleaded, claiming title to the notes, and on this issue the evidence is examined and *held* sufficient to justify the jury in rendering a verdict for the respondent. The instructions given on behalf of respondent are also examined and approved.

2. ————: ————: **Interpleader Must Show What.** An interplea, under section 2345, Revised Statutes 1909, is a statutory replevin, engrafted on the attachment suit, and in order for

the interpleader to prevail he must have legal title or right to immediate possession.

3. **APPEAL AND ERROR: New Trial: Sufficiency of Evidence.** The granting of a new trial on the ground that the verdict is against the weight of the evidence is exclusively within the province of the trial court. The appellate court will only look into the record to see if there is any substantial evidence to support the verdict and unless it is shown that the discretion of the trial court is abused, the appellate court is powerless to interfere.

4. **FRAUD: Sufficiency of Evidence: Attachment: Interpleader.** In an attachment suit where the respondent interpleads and claims ownership of the notes attached, the evidence is examined and *held* that there was no showing of any fraudulent motive of either defendant or respondent in the transaction covering the notes in question.

5. **PLEADING: General Denial: Fraud: Burden of Proof: Attachment: Interpleader,** In an attachment suit where respondent interpleads and claims ownership of the notes seized under the writ of attachment, the plaintiff under a general denial to the claims made by respondent as interpleader would be entitled to show that the interpleader's claim was fraudulent and that he had no title. The burden of proof, however, would be upon the party charging the fraud.

Appeal from Lawrence Circuit Court.—*Hon. Carr McNatt,* Judge.

AFFIRMED.

*John L. McNatt* and *McCune, Harding, Brown & Murphy* for appellant.

(1) The verdict in this case was grossly against the evidence. There was no creditable evidence to support it. The court should have granted a new trial on that ground. The discretion of the trial court is not absolute. This court will interfere with such discretion if it appears to have been unwisely exercised. Gould v. St. John, 207 Mo. 631. (2) The court erred by refusing to give instruction "G" offered by plaintiff. By so doing it denied plaintiff the right to its legal presumption that the father was the owner of

Bank v. Boyer.

the note; it denied plaintiff its prima facie case; and denied the jury the right to pass upon all subsequent transactions between the father and son touching the ownership of the note. Keim v. Vette, 167 Mo. 399; Horton v. Bayne, 52 Mo. 533; Baer v. Braves, 46 Mo. App. 245. (3) The court erred in giving instruction No. 1 for the interpleader. Jones v. Jones, 57 Mo. 138; Chouteau v. Works, 83 Mo. 73. ·(4) The court erred by giving instruction No. 2 for the interpleader. Peck v. Ritchey, 66 Mo. 114; Welkerson v. Thompson, 82 Mo. 317. (5) The court erred by giving instruction No. 4. It assumes the interpleader had a claim to the property. Washington v. U. Mory, 52 Mo. 480.

*J. M. McPherson* and *I. V. McPherson* for interpleader.

(1) There was no evidence upon which to predicate instruction "G." We therefore think refusal of instruction "G" was not error. Haskins v. Railroad, 58 Mo. 302; Cargyle v. Wood, 63 Mo. 501; Isler v. Storts, 30 Mo. App. 163; Carder v. Primm, 52 Mo. App. 102; Paquin v. Railroad, 90 Mo. App. 118; Sisk v. Ins. Co., 95 Mo. App. 695; Sowders v. Railroad, 127 Mo. App. 119; Bank v. Trust Co., 187 Mo. 494; Viertel v. Viertel, 111 S. W. 579. (2) The giving of instruction "I" correctly declared the law of this case. Torreyson v. Turnbaugh, 105 Mo. App. 443; Graham Paper Co. v. Crowther, 92 Mo. App. 275; Bank v. Totten, 114 Mo. App. 106. (3) Plaintiff complains of giving instruction 3 on behalf of the interpleader. This instruction was proper under the evidence in this case. Byrne v. Becker, 42 Mo. 264; Trust Co. v. Robb, 142 Fed. 78; Phelps, Dodges, Palmer Co. v. Sampson, 113 Iowa, 145, 84 N. W. 1051; Garmon v. Stevens, 13 Kas. 447; Brown v. Brown, 138 Mass. 386; Anslyn v. Franke, 11 Mo. App. 508; Wheeler v. Estate, 63 N. E. 975, 158 Ind. 687; State v. Foley, 144 Mo. 600.

161 App.—10

NIXON, P. J.—This is an action commenced in the circuit court of Lawrence county by the Gate City National Bank against J. H. Boyer upon a certain promissory note executed by J. H. Boyer on January 15, 1908, to the Miners and Merchants Bank of Aurora in the sum of $4,306.58. The note was subsequently discounted by the plaintiff, and Boyer having left the state, the plaintiff, in October, 1910, sued out a writ of attachment on the ground that J. H. Boyer was a non-resident of the state and under this writ seized in the hands of the Bank of Aurora two promissory notes and the deed of trust securing them as the property of J. H. Boyer. Thereafter, Z. M. Boyer appeared as interpleader, claiming title to the two notes seized. Upon trial before a jury the interpleader had judgment from which the plaintiff has appealed.

One of the notes seized was for $600 and the other for $700, both being dated October 20, 1908, payable to Z. M. Boyer three years after date with interest at eight per cent. per annum, and were executed by N. V. H. Walker and wife, being secured by a deed of trust on real estate. At the time the notes were executed, both Walker and J. H. Boyer resided at Aurora, in Lawrence county, Missouri. Z. M. Boyer was a resident of Portland, Oregon, and was an insurance agent, his business taking him to different parts of the country, and he was frequently away from home at long periods of time. J. H. Boyer was a director in the Miners and Merchants Bank of Aurora, of which his son-in-law was the cashier. J. H. Boyer and Walker were old friends. Walker applied to him for a loan which he was unable to make because of lack of funds, but he made an effort to get the money for Walker from different persons. Among others, he applied to one of his clients by the name of Stewart in Kansas City and went to see her but she was unable to furnish the money, and, having promised the money, his son, Z. M. Boyer, the interpleader, to complete the

transaction, consented to make the loan himself. The evidence tends to show that at the time the notes were executed, J. H. Boyer had entire charge of making the loan, and that Walker knew nothing of Z. M. Boyer having any interest whatever in the loan. The notes, however, were executed to Z. M. Boyer, but Walker testified he did not notice that fact.

The evidence tends to show that Z. M. Boyer furnished $700 of his own funds in making the loan; that he drew his check on the Security Savings and Trust Company of Portland, Oregon, for the sum of $600, payable to J. H. Boyer, which check was deposited in the Miners and Merchants Bank of Aurora on the date the loan to Walker was made; that on October 21, 1908, this check passed through the Gate City National Bank, bearing its stamp, and that in the regular course of business it reached the Security Savings and Trust Company of Portland, Oregon, where it was charged to the account of Z. M. Boyer and duly paid; that on the same day, Z. M. Boyer drew another check on the Security Savings and Trust Company of Portland for the sum of $100, payable to J. H. Boyer, which, with the check for $600, made the sum of $700; that this check on October 21, 1908, likewise passed through the Gate City National Bank, as shown by its stamp, and was duly honored by the Security Savings and Trust Company of Portland and paid out of the account of Z. M. Boyer. As to the other $600— to make up the loan of $1,300 to Walker—both Z. M. Boyer and J. H. Boyer testified that this amount was loaned to Z. M. Boyer by J. H. Boyer on the day that the Walker loan was made.

On the day the loan was completed, the note for $600 was indorsed by Z. M. Boyer, and the two notes were left in the possession of J. H. Boyer. The reason given for indorsing the note for $600 and not the note for $700 was that the notes were drawn "payable at the option of the maker in sums of $100 or multiples

at any interest paying date," and that Z. M. Boyer indorsed this note to give Walker the opportunity, in case he should wish to do so, to pay any part of the loan.

The money for which the two notes were executed was paid to Walker by the personal check of J. H. Boyer. All the interest payments were made to J. H. Boyer, and the subsequent correspondence of Walker in regard to the notes was with J. H. Boyer. Subsequently, in June or July, 1909, J. H. Boyer moved to Portland, Oregon. The testimony goes to show that soon after his arrival there, he turned these notes together with the deed of trust securing them and the insurance policy over to his son, Z. M. Boyer, who then resided in Portland, and that Z. M. Boyer took possession of them and deposited them in his safe deposit box in the Security Savings and Trust Company of Portland. That J. H. Boyer also had a key to this box and that they used it jointly in which to deposit their private papers. Afterwards, Walker having made arrangements for a loan with a less rate of interest, desired to pay off these notes and applied to J. H. Boyer for that purpose.

It appears that after the time of the execution of the notes, J. H. Boyer drew various checks on the account of Z. M. Boyer in the Security Savings and Trust Company of Portland and signed them "Z. M. Boyer, by J. H. Boyer;" that the aggregate amount of such checks was $927.97, of which amount Z. M. Boyer claims $712.56 went to repay his father for the money loaned at the time the two notes of Walker were executed.

Subsequently, when Walker applied to pay the notes, the note for $700 was indorsed by J. H. Boyer, and the notes, deed of trust, and insurance policy, with a letter from J. H. Boyer, were sent to the Bank of Aurora for collection. To the papers was attached a draft by J. H. Boyer for the amount due on the notes.

The only evidence offered as to the solvency of J. H. Boyer tended to show that at the time he executed his note for $4,306.58 to the Miners and Merchants Bank of Aurora he was not otherwise indebted. The note itself was secured. No evidence was offered to show that at any time J. H. Boyer was insolvent or in failing circumstances, at or subsequent to the date he executed the said note for $4,306.58.

The statute concerning interpleas in attachment suits is as follows: "Any person claiming property, money, effects or credits attached, may interplead in the cause, verifying the same by affidavit, and issues may be made upon such interplea, and shall be tried as like issues between plaintiff and defendant, and without any unnecessary delay." [Sec. 2345, R. S. 1909.] An interplea under this section is a statutory replevin engrafted on the attachment suit, and in order for the interpleader to prevail he must have legal title or right to immediate possession. [Brownwell & Wight Car Co. v. Barnard, 139 Mo. 142, 40 S. W. 762; Rice, Stix & Co. v. Sally, 176 Mo. 107, 75 S. W. 398.] The case was tried upon the theory that the right of possession of the notes executed by Walker depended upon their actual ownership, the plaintiff claiming that they were the property of J. H. Boyer, and the interpleader claiming the notes on account of being the absolute owner of them, the whole right of possession depending upon ownership.

It is contended that the trial court committed error in refusing to grant a new trial because the verdict was not supported by the evidence. To support this contention, appellant's attorneys with great ability have discussed the weight of the evidence and credibility of the witnesses in some twenty pages of their brief. It is hardly necessary for an appellate court to say that when a trial is had before a jury their verdict will not be set aside if there is any substantial evidence, or, if two different conclusions could

reasonably be drawn from the evidence. But the rules governing trial courts in reviewing verdicts because not supported by sufficient evidence are not the same as those governing the appellate court. The trial courts may weigh the evidence, and, if they think injustice has been done, should grant a new trial. It is their duty to supervise the verdict of the jury and grant a new trial if the verdict in the opinion of the court is against the weight of the evidence, or if it is arbitrary and manifestly or clearly wrong, or if it appears to be the result of passion, prejudice or misconduct of the jury. The granting of a new trial on the ground that the verdict is against the weight of the evidence is exclusively within the province of the trial court and the appellate court will only look into the record to see if there is any substantial evidence to support the verdict; and unless it is shown that the discretion of the trial court was abused, the appellate court is powerless to interfere. [Kinlen v. Street Ry. Co., 216 Mo. 145, 115 S. W. 523.]

In the present case, there were only two witnesses who were personally knowing to the transaction concerning the giving of the notes and by whom the money was actually furnished to make the loan as well as the subsequent possession and collection of the notes. The testimony of these witnesses was substantially the same and was to the effect that the loan was made with $700 of the money of Z. M. Boyer and $600 borrowed by Z. M. Boyer from J. H. Boyer, and that the notes were executed to Z. M. Boyer, and were collected by the father as agent for his son, and that Z. M. Boyer was absolute owner and entitled to possession of said notes. There is no evidence in the record showing that at the time of any of these transactions J. H. Boyer was insolvent or in failing circumstances. The evidence shows that Z. M. Boyer had no knowledge at the time these notes were executed that his father had executed his note to appellant for

$4,306.58. With this evidence in the record, an appellate court cannot say that the trial court abused the discretion the law intrusted to it in refusing to grant a new trial.

The court gave for the interpleader, over plaintiff's objections, the following instruction:

"1. The court instructs the jury that the sole issue to be decided by you in this case is whether or not the notes and trust deed attached by the sheriff in this case is the property of the interpleader, Z. M. Boyer, or the property of some one else. Therefore, if you believe from the evidence in this case that the note of $600 and the note of $700 and the trust deed securing the same, taken by the sheriff on the writ of attachment against J. H. Boyer, is the property of the interpleader, Z. M. Boyer, then you will find the issues for the interpleader for such property."

Under the terms of this instruction the ownership of the deed of trust as well as the notes was made an issue of fact for the jury to pass upon. This clause in the instruction the appellant objects to because as a matter of law the deed of trust followed the ownership of the notes which it secured, and that the jury were by such instruction called upon to pass on the ownership of the deed of trust. It is sufficient to suggest in this connection that even if this is true there was no reason why the writ of attachment should have been levied on the deed of trust and its possession detained by the sheriff. The plaintiff, by the writ, having taken possession of the deed of trust as the property of J. H. Boyer, cannot now be heard to say that if it was the property of Z. M. Boyer he was not entitled by the verdict of the jury to have it returned to him. At any rate, if error was committed it was not material.

Another objection made to this instruction by the appellant is that the instruction employs the word

"is" instead of saying that the notes and deed of trust "were" the property of the interpleader at the time of the levy of the writ of attachment. We think this is a refinement. There was no showing that the title to the property attached had been changed at any time between the time the levy was made and the time the trial was had. The one who had title at one time had title at the other time. Hence it is quite immaterial whether the instruction confined the determination of the ownership to the time of the levy or the time of the trial as the appellant could not have been injured by such an instruction.

The court gave for the interpleader over plaintiff's objections the following instruction: (We copy it as appellant has it in its brief.)

"2. (A) You are instructed that what a man may lawfully do himself he may do through an agent. (B) The interpleader herein, Z. M. Boyer, had a right to employ his father, J. H. Boyer, as his agent in making the loan to Mr. Walker. (C) You are therefore instructed that if you believe from the evidence that in lending the money evidenced by the notes described in the interpleader's petition J. H. Boyer acted as the agent of the interpleader, and loaned the money of Z. M. Boyer, evidenced by said notes, as the agent of said Z. M. Boyer, the interpleader, then you will find for the interpleader."

Objections are marked out by appellant to this instruction under the headings, A, B and C. The first, A, because the sentence thus designated is an abstract proposition of law. We cannot recognize that the statement in the connection in which it is used could in any way be held by a court to be reversible error. Sentence B is denominated "a lecture to the jury." In a sense, it may be said that every instruction is a lecture to the jury as to the law of the case. At any rate, because the instruction informs the jury that the son had a right to employ his father as agent in mak-

ing the loan to Walker affords no serious ground for complaint and certainly does not rise to the dignity of being reversible error. Sentence C is also complained of because it ignores all the evidence other than the agency of the father at the time the loan was made. Under the evidence developed in this case, the above instruction was not in any way calculated to mislead the jury as to the issue they were called upon to determine, it being whether the notes seized by the sheriff were the property of the interpleader, Z. M. Boyer, or of his father, J. H. Boyer, as there was no evidence in the record that after the execution of the notes and the completion of such transaction there was any transfer of their title to Z. M. Boyer.

The court gave the following instructions for the appellant:

"C. The court instructs the jury that if you find and believe from the evidence that the interpleader, Z. M. Boyer, had no interest in said notes, but that the same were made payable to him merely for the purpose of carrying the same in his name, then it is your duty under the law to return a verdict in favor of the Gate City National Bank."

"E. The court instructs the jury that if you believe from the evidence that when the loan was made to Walker, J. H. Boyer furnished the money himself and for his own use, and that Z. M. Boyer had no interest therein, then your verdict must be for the Gate City National Bank, even though you may further find that the notes and deed of trust were made out in the name of Z. M. Boyer."

Hence under the appellant's instructions the title to the notes depended upon the finding of the jury as to the nature of the transactions at the time the notes were executed.

The court gave for the interpleader over plaintiff's objections the following instruction:

"3. You are further instructed that in determining whether or not the property attached is the property of the interpleader, Z. M. Boyer, or of the defendant, J. H. Boyer, and in determining whether or not the said notes were taken in the name of Z. M. Boyer fraudulently or in good faith, you should take into consideration all the facts and circumstances in evidence, including the evidence of motive actuating the said J. H. and Z. M. Boyer if the motive actuating the said J. H. and Z. M. Boyer has been shown or the lack of motive actuating the said J. H. or Z. M. Boyer to take notes for a debt due said J. H. Boyer in the name of Z. M. Boyer, provided you believe a lack of motive so to do has been shown."

This instruction is objected to because it calls attention to the motive of J. H. and Z. M. Boyer and because the jury are enjoined to find that they acted jointly with a motive to defraud.

The theory of the plaintiff at the trial as shown by its instructions does not embrace questions in regard to the solvency or failing circumstances of J. H. Boyer and no finding is asked for plaintiff by plaintiff's instructions on account of the notes having been transferred from J. H. Boyer to Z. M. Boyer to hinder or delay or defraud creditors, and no finding is required of the jury as to whether the arrangements by which the notes were given or carried in the name of Z. M. Boyer was a fraudulent contrivance to protect J. H. Boyer against his creditors. The record in the case further fails to show that the ground for the attachment was the fraud of J. H. Boyer, but does show as the ground for attachment that he was a non-resident of the state.

At the trial, the interpleader offered evidence to show that the note of J. H. Boyer for $4,306.58 was secured and that the value of such security was $10,000, and the offer was made in order to show that there was no motive for the parties in taking the at-

tached notes otherwise than in good faith. The appellant objected to such evidence for the reason that it did not tend to prove any issue in the case. This was a correct statement of appellant's position as shown by its instructions which asked the jury to find that the loan was made to Walker by J. H. Boyer who furnished the money himself and that the notes were made payable to Z. M. Boyer merely for the purpose of carrying the same in his name. Under plaintiff's general denial, it was entitled to show that the interpleader's claim of ownership of the notes was fraudulent and that he had no title. [First Nat. Bank of Mankato v. Kansas City Lime Co., 43 Mo. App. 561; Hellman & Co. v. Pollock & Co., 47 Mo. App. 205.]

If, however, such a theory had been advanced by plaintiff's instructions, it could not have been sustained as there was no proper evidence in the record upon which to base it. There was no showing of any fraudulent motive of either of the parties. There was no showing that J. H. Boyer was in any way indebted to any person except on the note for $4,306.58, and there was no evidence in the record showing that said note was not amply secured or that J. H. Boyer did not own sufficient property available for the payment of such note. The evidence tended to show that the interpleader had no knowledge that his father was indebted on such note. If it is true that no creditor or other party was in any way interested in any funds that J. H. Boyer loaned to his son or used in making the loan, Boyer and son were at liberty to make their own arrangements in their own way. The particular and material question upon which this case rested at the trial was whether under the evidence at the time the loan was made J. H. Boyer furnished the money used to make the loan and whether J. H. Boyer at the time of the levy of the writ of attachment owned the notes or whether they were owned absolutely by Z. M. Boyer. It was competent for the jury to examine

all the evidence in the case in determining the question of ownership of the notes and ascertain what construction the parties themselves put on the transaction. The question of motive, and whether the acts of the parties were tainted with fraud or whether the transaction was an honest one in making the notes in the name of Z. M. Boyer, was so stated in the instruction under the consideration as not to constitute reversible error. And we think under the evidence that by this instruction an unnecessary burden was cast upon the interpleader. There were no facts or circumstances in the record which were not consistent with honesty and fair dealing and from which fraud could be legitimately deduced, and it is a well-established principle that fraud is never to be presumed. The burden of proof, however, in an attachment suit is upon the party who charges fraud. [Mansur-Tebbetts Imp. Co. v. Ritchie, 143 Mo. 587, 45 S. W. 634.] Motives are always regarded as important as a means of unravelling the tangled web of human transactions and often furnish the only satisfactory clew that leads to the truth. We do not think the jury could have been mislead by this instruction. If, however, the question of fraud was to be contested, the motive and intention of the parties was a proper subject for the jury's consideration.

The court gave for the interpleader over plaintiff's objections the following instruction:

"4. Even if the jury believes from the evidence that J. H. Boyer had the possession or the right of possession of the property attached, as agent for the interpleader, then you are instructed that such possession, or such right of possession of said J. H. Boyer as interpleader's agent, would not defeat the claim of the interpleader."

Appellant objects to this instruction because the last clause assumes that the interpleader had a claim which is in issue. The claim referred to in the instruc-

tion related no doubt to his interplea in which he claims to be the owner of the notes as against the attaching creditor.

Another objection is that the court erred in refusing to give the following instruction for the plaintiff:

"G. The court instructs the jury that even if you believe from the evidence that Z. M. Boyer furnished the money for the two notes and they were made to him in good faith, yet if you further find from the evidence that he subsequently delivered them to his father, J. H. Boyer, for the purpose of passing title to him, then your verdict must be for the Gate City National Bank and against the interpleader, Z. M. Boyer."

It is apparent that this instruction proceeded on the assumption that Z. M. Boyer was the owner of the notes at the outset and furnished the money to make the loan for which the two notes were executed, and further that they were made to him in good faith on account of his money so furnished. If, then, they were subsequently delivered to his father for the purpose of passing title, his ownership would be derived by sale or gift. The instruction does not state the necessary elements to constitute a sale as it does not require a consideration. And in order to constitute a valid gift, the notes must have been delivered with the intention of making a gift and passing the title. A mere delivery of property without such intention would not pass title. A delivery of property through inadvertence or mistake, without any intention of passing title thereto, would not support a gift. To show such intention it is not necessary that any form of words be observed at the time; if the circumstances clearly evince the intention this is sufficient, and if these are equivocal an explicit declaration afterwards of that intention is competent. [14 Am. & Eng. Ency. Law, 1020.] The only witnesses who were knowing

to the transaction and who could testify as to what disposition was made of the notes after their execution were the interpleader and his father. Their testimony tended to show that the notes were executed to Z. M. Boyer because of the funds he had furnished to make the loan, and that the notes continued from the time of their execution by Walker in the possession of J. H. Boyer as agent of Z. M. Boyer until some time in June or July, 1909, when J. H. Boyer moved to Portland, Oregon, and delivered the notes to Z. M. Boyer who put them in his safe deposit box at the bank; that both J. H. and Z. M. Boyer had a key to this box and that in it they kept their private papers; that the notes remained in this box until Walker applied to pay them off, when, under the direction of Z. M. Boyer, J. H. Boyer sent them to the Bank of Aurora for collection and they were attached. The facts disclosed by the record furnished no substantial evidence that there ever was any gift or transfer of title of the notes from Z. M. to J. H. Boyer with the intention of parting with the title. If the appellant wished to present the presumption that arose from the possession of the notes, it should have drawn and tendered to the court a proper instruction covering that phase of the case. We think the instruction was properly refused because not supported by the evidence.

The trial court admitted in evidence over plaintiff's objections certain insurance policies to Walker, —"loss payable to Z. M. Boyer as his interest might appear." This was cumulative evidence to show that these securities were made to secure Z. M. Boyer for the loan and were *res gestae,* and as part of the original transaction were competent evidence.

It is urged by the appellant that the court erred in admitting improper evidence over its objections in that it permitted the interpleader to prove the contents of an alleged power of attorney or an arrange-

ment between him and his father whereby he was to repay his father the $600 claimed to have been loaned at the time the notes were executed. The evidence referred to is as follows: "Q. Have you anything to show the arrangement between you? A. I have. Q. Is this paper marked Exhibit M, and the letter that goes with it marked Exhibit N, the arrangement by which your father was to be paid this $600? Mr. Mc-Natt: Objected to as calling for a conclusion. It assumes that the money was loaned and it assumes that it was a satisfaction. The Court: Overruled. Mr. McNatt: Exceptions saved. The witness: A. That is a copy of the original power of attorney. Q. Now you may tell what your father did after these papers were made, and whether or not he paid himself this $600?" It will be seen from this that the court did permit the witness to testify that Exhibit M. was a copy of the original power of attorney, but the court did not permit the witness to testify as to its contents and the copy was not offered in evidence and there is no evidence in the record of its contents. Nor was the witness allowed to testify as to what payments or other proceedings were had by the parties under this power of attorney, but was allowed to state what was done after the papers were executed. No material error was committed by such rulings of the court.

The following evidence was also introduced by the interpleader: "Q. Have you got the checks which he drew against the account after you gave him the authority? A. I have. Q. Are these the checks? A. They are. Q. Who signed these checks? A. My father. Q. What is the aggregate amount of money that he drew after you gave him permission evidenced by these checks? Mr. McNatt: If the court please, there is no evidence of any agreement. The Court: He may answer the aggregate that his father drew out of the bank but not by any agreement. The objection is over-

ruled. Mr. McNatt: We except. The witness: A. The aggregate amount of these checks is $927.97.''

This testimony is objected to because the court permitted the interpleader to introduce the checks made by his father signing the interpleader's name, and because they showed on their face they covered a period of from ten months to two years subsequent to the giving of the notes. The object of the evidence offered by the interpleader was to show that the $600 he claimed that he had borrowed from his father at the time the loan was made was subsequently repaid to his father by these checks. The court permitted the witness to testify to the amount of checks drawn on his account, but refused to permit him to testify as to whether they were drawn under any agreement because the agreement was not offered in evidence.

Near the conclusion of the examination of the interpleader as a witness, after he had gone fully into the origin of the notes, and the facts concerning them had been stated of his own personal knowledge, he was allowed to state ''that nobody had any interest in those notes besides himself.'' If the testimony already given was to be believed, the jury could draw but one conclusion from it. That witness and no one else was interested in the notes. Hence his statement of such a conclusion added nothing to the weight of his evidence. J. H. Boyer also had previously testified to facts that made out the same conclusion. [Hoffman v. Street Ry. Co., 51 Mo. App. 273; Lane v. Lane, 113 Mo. 504, 21 S. W. 99.] The error was a technical and not a substantial one and we are forbidden by the express terms of the statute to reverse a judgment for error not materially affecting the merits of the action. [Sec. 2082, R. S. 1909.]

There were other objections made by the appellant and we have given them consideration and find that they do not constitute material error. A careful

examination of the proceedings at the trial discloses that the case was fairly and impartially tried and substantially as required by law. The judgment is affirmed. All concur.