VALIOTIS v. UTAH-APEX MINING CO.

No. 3299.   Decided October 10, 1919.   (184 Pac. 802.)

1. TRIAL—TESTIMONY ASSUMED TRUE ON NONSUIT.   Testimony
   for plaintiff must be assumed to be true on motion for nonsuit.
   (Page 156.)

2. TRIAL—IMPEACHMENT BY SHOWING CONTRADICTORY STATEMENTS.
   A statement signed by a witness and containing statements
   of fact inconsistent with his testimony is competent only for
   purpose of impeachment, and therefore raises a question of
   credibility of the witness for jury and not the court to decide.
   (Page 156.)

3. TRIAL—NONSUIT IMPROPER IN FACE OF SUSTAINING TESTIMONY.
   Court properly overruled motion for nonsuit where plaintiff's
   evidence tended to prove his cause of action.   (Page 156.)

4. TRIAL—PLAINTIFF ENTITLED TO INFERENCES ON MOTION FOR NON-
   SUIT.   On motion for nonsuit, court may give to the plaintiff
   the benefit of every fair and reasonable inference that might
   properly be drawn from the evidence by the jury.   (Page
   156.)

5. TRIAL—INSTRUCTIONS SINGLING OUT FACTS IMPROPER.   In ac-
   tion for injuries to employé, instruction held properly refused,
   in that by singling out certain facts which the evidence tended
   to prove it invaded province of jury.   (Page 158.)

6. MASTER AND SERVANT—MISLEADING INSTRUCTION ON RES IPSA
   LOQUITUR.   In an employé's action for injuries, a requested in-
   struction that no negligence is to be presumed because of the
   happening of the accident held properly refused as misleading,
   in that jury might have misunderstood the term "accident"
   to refer to the accident with all attendant circumstances de-
   scribed by the witnesses.   (Page 158.)

7. TRIAL—NECESSITY OF REQUEST FOR INSTRUCTIONS.   If it was
   the contention of employer, being sued for injuries to employé
   from broken rung in ladder, that question of whether broken
   rung rendered ladder unsafe, was for jury, such idea should
   have been embodied in a proper request.   (Page 159.)

8. MASTER AND SERVANT—ADMISSIBILITY OF EVIDENCE IN ACTION
   FOR INJURIES.   In action for injuries to an employé from a
   loose rung in a ladder, evidence of the hoisting of heavy
   timbers which sometimes swung against ladder and loosened
   rungs was admissible to show the cause of the defect and
   necessity of frequent inspection by employer.   (Page 160.)

9. NEW TRIAL—VERDICT PALPABLY AGAINST WEIGHT OF EVIDENCE.
   Trial judge should set aside verdict for insufficiency of evi-
   dence whenever in his judgment the verdict is clearly and
   palpably against the weight of the evidence, but generally ought

not, in view of Comp. Laws 1907, section 3478 (Comp. Laws 1917, section 7208), disturb verdict if in his opinion there is substantial evidence to support it, since to do so would be to invade province of jury.[1]  (Page 160.)

10. APPEAL AND ERROR—REVIEW OF QUESTIONS OF FACT. By constitutional provision, appeals do not lie on questions of fact in law cases.[2]  (Page 162.)

11. APPEAL AND ERROR—REVIEW OF DISCRETION IN RULING ON MOTION FOR NEW TRIAL. The granting or denial of a motion for new trial founded on the insufficiency of the evidence to justify the verdict, where the evidence is conflicting, rests in the sound legal discretion of the trial judge, and his decision will not be disturbed on appeal unless there is a clear abuse of discretion.[3]  (Page 162.)

12. APPEAL AND ERROR—REVIEW OF RULING ON MOTION FOR NEW TRIAL. Appellate court will examine evidence to ascertain whether there is a substantial conflict or whether there is substantial evidence to support verdict, and if there is a substantial conflict will hold that lower court did not abuse its discretion in refusing new trial, but if evidence is incredible or inherently improbable or inconsistent with natural laws as to impel conclusion that verdict is result of mistake, prejudice, or passion, court will hold lower court in error notwithstanding some conflict in the evidence.[4]  (Page 164.)

13. MASTER AND SERVANT—NOTICE OF DEFECT IN LADDER AS JURY

---

[1] *Nelson* v. *Rapid Transit Co.*, 10 Utah, 196, 37 Pac. 268; *Farr* v. *Griffith*, 9 Utah, 416, 35 Pac. 506.

[2] *Whittaker* v. *Ferguson*, 16 Utah, 240, 51 Pac. 980; *Harris* v. *Laundry Co.*, 39 Utah, 436, 117 Pac. 700, Ann. Cas. 1913E, 96; *Hill* v. *S. P. Co.*, 23 Utah, 94, 63 Pac. 814; *Hoggan* v. *Cahoon*, 31 Utah, 172, 87 Pac. 164; *Nelson* v. *S. P. Co.*, 15 Utah, 325, 49 Pac. 644; *Anderson* v. *Mining Co.*, 15 Utah, 22, 49 Pac. 126; *Connor* v. *Raddon*, 16 Utah, 418, 52 Pac. 764.

[3] *White* v. *Union Pac. Ry. Co.*, 8 Utah, 56, 29 Pac. 1030; *Nelson* v. *Rapid Transit Co.*, 10 Utah, 196, 37 Pac. 268; *Anderson* v. *Railway Co.*, 35 Utah, 509, 101 Pac. 579; *Luncino* v. *Smith et al.*, 36 Utah, 462, 105 Pac. 914.

[4] *Railroad Co.* v. *Board of Education*, 32 Utah, 310, 90 Pac. 566, 11 L. R. A. (N. S.) 645; *State* v. *Brown*, 36 Utah, 46, 102 Pac. 641, 24 L. R. A. (N. S.) 545; *Cobb* v. *Hartenstein*, 47 Utah, 174; 152 Pac. 424; *Russell* v. *Watkins*, 49 Utah, 598, 164 Pac. 867; *Newton* v. *Railroad Co.*, 43 Utah, 229, 134 Pac. 571; *Christianson* v. *Railroad*, 35 Utah, 146, 99 Pac. 680, 20 L. R. A. (N. S.) 255, 18 Ann. Cas. 1159; *Tremelling* v. *Southern Pac. Co.*, 51 Utah, 189, 170 Pac. 84; *Jensen* v. *Railroad Co.*, 44 Utah, 100, 138 Pac. 1185.

QUESTION. In action for injuries to employé from a loose rung in a ladder, where defense was that employé had slipped off a secure rung. and that employer had no notice of the defect, *held*, under the evidence, that the case was for the jury. (Page 169.)

14. NEW TRIAL—INSUFFICIENCY OF EVIDENCE. In action for injuries to employé from loose rung in ladder where defense was that employé had slipped off a secure rung and that employer had no notice of defective rung, court did not abuse its discretion in overruling motion for new trial because of insufficiency of evidence, where evidence was conflicting and subject to different inferences and presented a case of the credibility of witnesses. (Page 170.)

Appeal from District Court, Third District, Salt Lake County; *R. B. Porter*, Judge.

Action by Dan Valiotis against the Utah-Apex Mining Company. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*King, Straup, Nibley & Leatherwood*, of Salt Lake City, for appellant.

*Olson & Lewis*, of Salt Lake City, for respondent.

PRATT, District Judge.

Plaintiff brought this action to recover damages for personal injuries sustained by him on October 10, 1916, while working as a miner for the defendant in its mine at Bingham Canyon, Salt Lake county, Utah.

Among other facts, plaintiff's complaint in substance alleges that on October 10, 1916, the defendant had provided as a means of ingress and egress to and from the working place of the plaintiff in said mine a certain manway consisting of wooden ladders extending vertically between two levels in said mine (the 1,300 and 1,200 foot levels) of a height of about 100 feet; that prior to and at the time of the injury to plaintiff the defendant negligently and carelessly caused and per-

mitted one of the steps or rungs on said ladderway to be broken or loosened so as to afford no support for plaintiff's feet at that point; and that by reason of the said carelessness and negligence of the defendant the plaintiff, while descending said ladderway, on or about the 10th day of October, 1916, fell down the shaft or manway in which the ladderway was constructed, a distance of about eighty-five feet, and was thereby greatly and permanently injured, etc. Defendant's answer denies these allegations of the complaint, and alleges contributory negligence and assumption of risk on the part of the plaintiff.

The case was tried to a jury and resulted in a verdict and judgment for the plaintiff upon conflicting evidence. At the close of plaintiff's case, defendant moved for a nonsuit, which motion was overruled by the court. After verdict and judgment for the plaintiff, defendant moved for a new trial, which motion was also overruled by the court, and thereafter in due time defendant appealed.

The record discloses the following facts: Three shifts were employed in defendant's mine, each consisting of drillmen, timbermen, and muckers, and each shift being in charge of a shift boss. The first shift went to work at 8 o'clock in the morning, was relieved at 4 o'clock in the afternoon by the second shift, and the second shift was relieved by the third at midnight, which last shift worked until 8 o'clock in the morning. The change of shifts was effected in about one-half hour, so that the second shift, on which plaintiff worked at the time of his injury, went to work at about 4 o'clock in the afternoon and quit work at 11:45 at night, and the third shift began work about 12:15 a. m. On October 10, 1916, and for several months prior thereto, the three shifts, in turns, had been working in the mine on the 1,200-foot level, which level was reached from the next lower level, known as the 1,300-foot level, by means of the ladder in question. This ladder consisted of two by four inch uprights, on which were nailed two by four crosspieces, or rungs, a foot apart, the extremities of which rested in grooves in the upright sides and face of the ladder cut to a depth of one and one-half inches and of suffi-

cient width to receive the rungs. There was some conflict in the evidence as to the size of the nails used to fasten the ends of the rungs into the grooves. The ladder was erected in sections, end to end, and stood vertically between the two levels to a height of about one hundred feet, in a shaft four feet eight inches square. In going to and returning from their place to work on the 1,200-foot level, the men were required to climb up and down this ladder, each carrying a light. Heavy timbers and drills were hoisted up through the same shaft, and it was shown that the timbers sometimes swung against the ladder and loosened the rungs, necessitating repairs. Timbers had been so hoisted some time during the afternoon of October 10th while plaintiff's shift was working on the 1,200-foot level. It was shown that the shift boss ordinarily followed his men in ascending the ladder when they went to work and preceded them in descending it when they quit their work, and that at lunch time it was his custom to descend the ladder to the 1,300-foot level and, after lunch, return to the place where his men were working. It was the shift boss' duty, and his practice, to order a timberman to make immediate repairs if he found anything wrong with the ladder. It was shown that the shift boss of the shift to which plaintiff belonged descended the ladder a few minutes before the accident. There was a conflict of evidence as to the condition of the ladder and, if defective, as alleged in the complaint, as to how long such defect had existed, as bearing upon the question of whether or not the defendant had constructive notice of it.

Plaintiff testified that as he climbed the ladder on the afternoon of the accident he did not notice any loose rungs, but that on leaving his work that night and climbing down the ladder he stepped on a loose rung about thirteen feet from the top, felt it give way, and he fell to the bottom, receiving certain injuries which he described.

The plaintiff having introduced his evidence tending to prove his cause of action as alleged (unless it was not shown that defendant had notice, either actual or constructive, of the defective condition of the ladder which caused plaintiff to

fall), the defendant moved for nonsuit and contended in the lower court, and contends here, that it was not shown that defendant had notice, actual or constructive, of the defective condition of the ladder. The court overruled the motion, and this ruling of the court is assigned as error by the appellant.

Counsel for appellant contend that the only evidence having any tendency to prove either actual or constructive knowledge on the part of the defendant of any defect in the ladder was given by Nick Katrinas, a fellow workman of the plaintiff, who testified that he (Katrinas) had observed loose rungs in the ladder for three or four days prior to the accident and also on the day of the accident. But, say counsel, this witness was self-impeached by the typewritten statement which he admitted having signed and which he made to the defendant company in March, 1917, concerning the accident, in which the witness said that the ladder was "in good condition and no rungs were broken." This statement was introduced as Exhibit 1 on cross-examination of the witness. He testified that he did not know at the time of signing it that it contained such a statement of fact; that that part of the exhibit wherein it is stated that the ladder was "in good condition and no rungs were broken" had not been read to him; and that he could not read. "It was untrue," said the witness. This testimony on motion for nonsuit must be assumed to be true. Exhibit 1 was not competent proof of the facts stated in it and was not and could not be used as such. It was competent and material for the purpose of impeachment only. It raised, therefore, merely a question of the credibility of the witness, a question for the jury to decide and not for the court. As the evidence on behalf of the plaintiff tended to prove the cause of action alleged by him, and on motion for nonsuit the trial court must give to the plaintiff the benefit of every fair and reasonable inference that might properly be drawn from the evidence by the jury, the court did not err in overruling the motion for nonsuit.

Appellant complains of certain parts of the court's charge to the jury, to none of which did appellant reserve an exception except to paragraph 7 of the charge, which reads as follows:

"If you find by a preponderance of the evidence that the defendant neglected to exercise reasonable care and diligence to maintain said ladder way described in plaintiff's complaint, in a reasonably safe condition, and that, by reason of said negligence on the part of the defendant, one of the rungs of said ladder, at or about a point thirteen feet from the top thereof, became so loose and insecure that it gave way under the weight of the plaintiff, as he stepped on it, while proceeding to descend the ladder, on or about October 10, 1916, thereby causing the plaintiff to fall down the manway, and sustain injuries as alleged in the complaint, your verdict should be for the plaintiff, unless you find by a preponderance of the evidence, that the plaintiff was himself guilty of negligence which proximately contributed to the injury, or unless you find that the plaintiff assumed the risk arising from such negligence of the defendant, as in these instructions explained."

Read and considered in connection with the entire charge, we fail to find prejudicial error in this instruction. But it is contended by counsel that this instruction and others given were contrary to defendant's requests Nos. 2 and 6, which the court refused to give. Those requests, refusal to give which is assigned as error, read as follows:

No. 2. "You are instructed that the plaintiff has not made out a case by merely showing that the step or round of the ladder was loose or broken. He is required to further show by a greater weight of the evidence that the defendant or its agents and officers whose duty it was to examine and repair the ladder, knew, or in the exercise of ordinary care could have known (of such condition), for a sufficient length of time prior to the accident, to have repaired the defect and have avoided the injury."

No. 6. "You are further instructed that no negligence is to be presumed or inferred against the defendant because of the happening of the accident, nor because the plaintiff fell from the ladder, nor are you to presume or infer any negligence on the part of the defendant merely because a round was loose or broken, or because it gave way as the plaintiff stepped upon it, if you should believe that there was any round loose or broken, or that it gave way."

Request No. 2 is, however, in substance contained in the court's instruction No. 13, whereby the court charged the jury as follows:

"If you find from the evidence that the defendant knew, or by the exercise of reasonable care ought to have known, that the

rung of the ladder in question was loose and insecure, if you believe that it was loose and insecure, and if sufficient time had elapsed after such knowledge, or after defendant, by the exercise of reasonable care, ought to have had such knowledge, in which to make necessary repairs, and if then the defendant did not repair the ladder and make it secure, and the plaintiff was injured by reason of such failure, then the defendant was guilty of negligence."

Request No. 6 was properly refused by the court. It is open to the objection that it singles out of a mass of facts and circumstances, which the evidence tended to    **5, 6** prove and which the jury had a right to consider, certain facts, minimizes their force and effect, and invades the province of the jury as to the inferences to be drawn therefrom in connection with all of the facts and circumstances as shown by the evidence. The request as framed was likely to mislead the jury, as the term "the accident" appearing in the request might have been understood by the jury to mean the accident with all the circumstances attending it, as described by witnesses, for the term "accident" is commonly used in that sense.

But it is urged by counsel that "it was not for the court but for the jury to say whether a loose or broken rung in the ladder rendered it unsafe or dangerous." If such was counsel's contention and the purpose of request No. 6, that idea should have been embodied in a proper request. No such request is contained in the record. It is quite evident from the record, particularly from defendant's requests, that the part of request No. 6 reading as follows: "Nor are you to presume or infer any negligence on the part of the defendant merely because a round was loose or broken"—was submitted on the theory of counsel that there could be no recovery by the plaintiff for an injury caused thereby unless defendant had knowledge of the defect or with ordinary care and diligence could have known of it in time to repair the ladder and prevent the injury.

However that may be, reasonable minds could not well differ as to the conclusion that the loose and insecure rung in the ladder, if proven, rendered it unsafe and dangerous, in

view of the undisputed evidence as to the use to which the ladder was put, the number of employés using it, its vertical length of one hundred feet in a dark shaft, the necessity of carrying a light while ascending or descending the ladder, the serious injury, perhaps death, that might result from a fall from it, and the fact, which the jury must have found, that while the plaintiff was descending the ladder he stepped upon a loose and insecure rung, which gave way, and caused him to fall to the bottom of the shaft, without fault on his part. The entire absence of a rung, since the rungs were only a foot apart, would have been less of a menace, snare or delusion, as a workman would not be likely to intrust his weight to space while descending the ladder.

Appellant complains of the refusal of the trial court to give defendant's request No. 11, which reads as follows:

"You are instructed that the defendant, as the employer of the plaintiff, was not required to furnish him an absolutely safe place to work, nor was the defendant an insurer of the plaintiff against accident and injury. The defendant can only be chargable with negligence, and can be held liable only in the event that you find that the defendant was guilty of negligence in the particulars alleged in the complaint." ·

Having charged the jury as the court did respecting the relative duties of the master and the servant, the risks assumed by the latter, and under what circumstances, and what circumstances only, the plaintiff could recover, it was not prejudicial error for the court to refuse to give this request. In our opinion the issues of fact and the respective theories of counsel for the parties were fully and fairly covered by the court's charge in its entirety, and the trial court did not err in the particulars assigned by appellant.

The next assignment of error upon which appellant relies relates to the admission of certain testimony. During the progress of the trial the plaintiff was permitted to show that it was the daily practice of the defendant company to hoist heavy timbers up the manway in question, and that sometimes said timbers swung against the rungs of the ladder and loosened them. Defendant objected to this testimony on the ground that it was immaterial and not within

the issues, which objection was overruled and an exception taken. Later, on direct examination, the same witness testified, without objection, that during the shift on which plaintiff was working on the day of his injury timbers were hoisted in the manway. There was other testimony tending to show the same facts.

In our opinion the testimony to which objection was made, especially in view of the fact that it was shown that timbers were hoisted in the manway during the shift on which plaintiff had been working when he was injured, was admissible as tending to show the cause of the loose rung and also the necessity of frequent inspection of the ladder by the defendant. The jury was instructed by the court that plaintiff's recovery, if any, must be based upon the negligence charged in plaintiff's complaint and no other; so that in effect this testimony was properly limited to the purposes for which it could be considered.

Lastly, counsel for appellant contend that the lower court erred in overruling defendant's motion for new trial. In the language of counsel, it is affirmed that the trial court "ought to have granted a new trial because the verdict was manifestly against the clear weight of the evidence, and that this is so palpable as to indicate that the jury either misconceived or mistook the charge or the evidence, or abused their trust, and that the learned court below for this reason abused its discretion in not setting aside the verdict and in not granting a new trial."

It will be perceived that counsel for appellant do not contend that there was no evidence to support the verdict, but that the verdict is so palpably against the clear weight of the evidence as to indicate that the trial court abused its discretion in refusing to grant a new trial. In other words, we are asked to review the weight of the evidence.

It is undoubtedly true, as counsel for appellant contend, that the trial judge may and should set aside a verdict for insufficiency of the evidence and grant a new trial, whenever in his judgment the verdict is clearly and palpably against the weight of the evidence. Not to do so

would be an abuse of his discretion. Ann. Cas. 1912D, 1226, note; *Gate City Nat. Bank* v. *Boyer*, 161 Mo. App. 143, 142 S. W. 487; *Nelson* v. *Rapid Transit Co.*, 10 Utah, 196, 37 Pac. 268; *Farr* v. *Griffith*, 9 Utah, 416, 35 Pac. 506.

But the trial judge ought not as a general rule ·to disturb the verdict if in his opinion there is substantial evidence to support it. To set aside the verdict in such case would be to · invade the province of the jury, in whom is vested the power to decide all questions of fact and to whom all evidence thereon is to be addressed. Comp. Laws Utah, 1907, section 3478; Comp. Laws Utah, 1917, section 7208. See 20 R. C. L. 277, where the rule is stated as follows:

"As the jury is the exclusive judge of the evidence, it must in reason be the exclusive judge of what constitutes the preponderance of the evidence, and, when that judgment is reached upon evidence sufficient to support a verdict, it should not be disturbed by the court."

Mr. Justice BREWER, in *Railway Co.* v. *Kunkel*, 17 Kan. 145, said:

"We do not mean that he (the trial judge) is to substitute his · own judgment in all cases for the judgment of the jury, for it is their province to settle questions of fact; and when the evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions thereon, he has no right to disturb the ·findings of the jury, although his own judgment might incline him the other way. In other words, the finding of the jury is to be upheld by him as against any mere doubts of its correctness. But when his judgment tells him that it is wrong, that whether from mistake or prejudice, or other cause, the jury have erred, and found against the fair preponderance of the evidence, then *no duty is more imperative than that of setting aside the verdict,* and remanding the question to another jury."

See, also, 20 R. C. L. 274, notes 9, 10, and 11.

The proper exercise of the trial court's power to set aside a verdict and grant a new trial has never been regarded as an invasion of the jury's function to decide the facts. If a new trial be granted, the trial court does not thereby decide a question of fact except only as it may be incidentally involved in its ruling as a matter of law that there is a legal insufficiency of the evidence to justify the verdict rendered. In such case the questions of fact are submitted to another jury

for decision under proper instructions as to the law of the case.

While the trial court may, as we have seen, review the evidence, consider its weight and the credibility of witnesses, and grant a new trial, if satisfied that there is a marked and clear preponderance of the evidence against the verdict, it is quite generally held that an appellate court has no such discretion.

One of the obvious reasons therefor is that the appellate court, limited to the examination of the record merely, has not the advantage that the trial judge has to judge such matters, having, as he does, the witnesses before him and being given the opportunity to see the witnesses, hear their testimony, and observe their demeanor while testifying. This is applicable alike to equity cases as well as law cases. *Wilcox* v. *Rhode Island Co.*, 29 R. I. 292, 70 Atl. 913; *Nelson* v. *Rapid Transit Co.*, 10 Utah, 193, 37 Pac. 268; *McCornick* v. *Mangum et al.*, 20 Utah, 17, 57 Pac. 428; *Endress* v. *Shove*, 110 Wis. 141, 85 N. W. 651. To which we may add that, by constitutional provision of this state, appeals do not lie on questions of fact in law cases. *Whittaker* v. *Ferguson*, 16 Utah, 240, 51 Pac. 980; *Harris* v. *Laundry Co.*, 39 Utah, 436, 117 Pac. 700, Ann. Cas. 1913E, 96; *Hill* v. *S. P. Co.*, 23 Utah, 94, 63 Pac. 814; *Hoggan* v. *Cahoon*, 31 Utah, 172, 87 Pac. 164; *Nelson* v. *S. P. Co.*, 15 Utah, 325, 49 Pac. 644; *Anderson* v. *Mining Co.*, 15 Utah, 22, 49 Pac. 126; *Connor* v. *Raddon*, 16 Utah, 418, 52 Pac. 764.

But as the right or power to review and decide controverted questions of fact on appeal in law cases did not exist prior to statehood and did exist, as now by constitutional provision, in equity cases, the constitutional restriction of appeals in law cases to the review of questions of law alone was probably intended to preserve this distinction without material change.

The granting or denial of a motion for new trial founded on the insufficiency of the evidence to justify the verdict, where the evidence is conflicting, rests in the sound legal discretion of the trial judge, and the question directly involved on appeal is whether or not that discretion has been improperly exercised or abused. As said in the case of *Harrison* v. *Sutter St. R. Co.*, 116 Cal. 161, 47 Pac. 1020:

"That the granting of a new trial is a thing resting so largely in the discretion of the trial court that its action in that regard will not be disturbed except upon the disclosure of a manifest and unmistakable abuse has become axiomatic and requires no citation of authority in its support."

And in *White* v. *Union Pacific Railway Co.*, 8 Utah, 56, 29 Pac. 1030:

"The rule is, when a motion is made for a new trial because of the insufficiency of the evidence and the testimony is conflicting, the granting or refusing a new trial is largely in the discretion of the trial court, and its act will not be overruled unless there is a clear abuse of discretion."

See, also, *Nelson* v. *Rapid Transit Co.*, supra; *Anderson* v. *Railway Co.*, 35 Utah, 509, 101 Pac. 579; *Lancino* v. *Smith et al.*, 36 Utah, 462, 105 Pac. 914.

This court has repeatedly held that the discretion of the trial court, exercised in granting or refusing to grant a motion for new trial, based on the insufficiency of the evidence to justify the verdict, cannot be interfered with when, upon examination of the evidence as disclosed by the record, it is apparent that there is a substantial conflict of evidence as to material issues of fact in the case relative to which the insufficiency is alleged. In such a case this court must hold as a matter of law that no abuse of discretion is shown. (Cases supra.) We must of necessity, however, in every such case examine the record of the evidence for the purpose of determining whether or not there is a substantial conflict or whether or not, as in the instant case, there is substantial evidence to support the verdict.

As said in *Railroad Co.* v. *Board of Education*, 32 Utah, at page 310, 90 Pac. at page 566, 11 L. R. A. (N. S.) 645:

"If there is no substantial evidence in support of any one or more of the material elements upon which the verdict and judgment rests, then it becomes merely a question of law for this court to determine, and we cannot shirk the responsibility of looking into the evidence to ascertain whether there is any substantial evidence in support of all the essential facts necessary to support the judgment by simply assuming that all questions of fact are for the jury and the trial court to pass upon."

See, also, *State* v. *Brown*, 36 Utah, 46, 102 Pac. 641, 24 L.

R. A. (N. S.) 545; *Cobb* v. *Hartenstein,* 47 Utah, 174, 193, 152 Pac. 424; *Russell* v. *Watkins,* 49 Utah, 598, 164 Pac. 867.

If it should appear that the evidence on which the verdict is based is so incredible or inherently improbable or so inconsistent with or contrary to natural laws or physical facts, as to impel but the one conclusion that the verdict is the result of mistake, prejudice, or passion, we might then very properly say that the verdict is not supported by substantial evidence, or that there is not a substantial conflict of evidence, and therefore the lower court abused its discretion or erred in refusing to grant the new trial. In such a case we look into the evidence, examine its legal effect, and opposing logical tendencies, if any, not for the purpose of deciding the facts, as we may do in equity cases, but to determine whether or not the trial court erred in its application of fixed legal principles. Our power or authority to do so must, of course, be exercised cautiously; but the fact that an incautious exercise of such power may transcend our constitutional authority in cases at law to hear and determine questions of law only is not inconsistent with its existence. A question of law is never an abstract question. It arises only with respect to ascertained facts or their logical and legal tendencies as matter of proof. The inquiry then is: What are the facts? And, secondly, what is the legal principle applicable thereto? If the evidence, taken as a whole, be reasonably susceptible of opposite conclusions as to the existence or nonexistence of an ultimate fact, depending upon inferences to be drawn therefrom, or the weight to be given to the testimony of this or that witness, or set of witnesses, we must conclusively presume the fact to be such as will support the ruling which we are called upon to review; but if, after giving due consideration to the fact that the trial judge is better able to weigh conflicting evidence, the evidence be such nevertheless as to impel but one reasonable conclusion, and that as to a fact adverse to the ruling, it would be our duty as an appellate court to so declare, notwithstanding there might be some conflict in the evidence.

In *Stafford* v. *Adams,* 113 Mo. App. 717, 88 S. W. 1130, the court said:

Appeal from Third District.

"It is the duty of courts to determine what constitutes substantial evidence, and the business of the triors of fact to settle conflicts therein."

And the same court, in *Brockman Commission Co.* v. *Aaron,* 145 Mo. App. 307, 130 S. W. 116, said:

"While appellate courts uniformly adhere to the rule that the credibility of witnesses and the weight to be given their testimony are issues of, fact and not of law, the rule has never been carried to the length of requiring courts to accord probative value to testimony that is so palpably false or absurd that no reasonable mind would give it any credence. It is within the province of the court to ascertain whether or not testimony has any evidentiary strength, and, if it is found to be impotent, to cast it aside as tho it had not been given."

In the case of *Toledo, St. L. & W. R. Co.* v. *Howe,* 191 Fed. 776, at page 782, 112 C. C. A. 262, at page 268, "substantial evidence" is defined with reference to the facts of that case as follows:

"It must be, as said Judge Severens, 'something of substance and relevant consequence, and not vague, uncertain, or irrelevant matter not carrying the quality of "proof" or having fitness to induce conviction.' "

And again, at page 785, of 191 Fed., at page 271 of 112 C. C. A.:

"If the circumstances are such that it can be said fair-minded men might not agree as to the conclusions to be drawn, the case must be submitted to the jury."

In *Newton* v. *Railroad Co.,* 43 Utah, at page 229, 134 Pac. at page 571, this court said:

"If it is clear that the injured person failed to exercise ordinary care, the question is one of law; but, if the circumstances are such as to leave that question shrouded in doubt to the extent that different minds may fairly and honestly arrive at different conclusions, then it is a question of fact."

As applied to particular circumstances of the case, the following statement, bearing upon the substantial evidence rule, is approved by this court in the case of *Christensen* v. *Railroad,* 35 Utah at page 146, 99 Pac. at page 680, 20 L. R. A. (N. S.) 255, 18 Ann. Cas. 1159.

"Where the evidence of negligence is entirely inferential and the testimony for the defendant is clear and undisputed to the

effect that there was no negligence, the plaintiff's case is overcome as a matter of law, and it becomes the duty of the judge to take the case from the jury."

The same doctrine was considered in the case of *Tremelling* v. *So. Pac. Co.*, 51 Utah at page 201, 170 Pac. at page 84, in the following language:

"It must not be assumed, however, that the rule thus stated can be given general application. Indeed, the rule can rarely be applied, since the evidence generally is such that it is the exclusive province of the jury to draw the inferences therefrom."

The following cases illustrate the principle that the appellate court will disregard evidence which is contrary to natural laws, physical facts, or scientific principles: Note to *Fleming* v. *Northern Tissue Paper Co.* (Wis.) 15 L. R. A. (N. S.) 701; *McCarthy* v. *Bangor & Aroostook Co.*, 112 Me. 1, 90 Atl. 490, L. R. A. 1915B, 140, and note; *Russell* v. *Watkins, supra.*

In *Jensen* v. *Railroad Co.*, 44 Utah, 100, 138 Pac. 1185, in which case it was urged that the trial court had erred in refusing to grant a new trial on the alleged ground that the verdict was excessive and was rendered under the influence of passion and prejudice, it was said:

"Whether a new trial should or should not be granted on this ground, of necessity, must largely rest within the sound discretion of the trial court. Still that court, in such particular, is not supreme or beyond reach. Its action may nevertheless be inquired into and reviewed on an alleged abuse of discretion, or a capricious or arbitrary exercise of power in such respect. Such a review is not a review of a question of fact, but of law. * * * Our power to correct a plain abuse of discretion or undo a mere capricious or arbitrary exercise of power cannot be doubted."

What are the facts which appellant contends clearly demonstrate that the lower court abused its discretion in denying the motion for a new trial? Are they of such a nature that we may say as a matter of law that the verdict is not supported by substantial evidence?

While the evidence on the part of the defendant, consisting of the testimony of seven witnesses, tended strongly to prove that the ladder in question was in sound condition at the time of the accident, which occurred about 11:45 at night, when the workmen of the second shift were leaving their work and

the third shift was preparing to come on, and that the plaintiff's foot probably slipped off a secure rung as he was descending the ladder, it was not conclusive. Not only the testimony of the plaintiff, but the testimony of three other witnesses produced in his behalf, equally positive and more direct, tended to prove that plaintiff's fall and consequent injury was caused by a loose rung which gave way as plaintiff stepped upon it. Reasonably certain it is that if the rung gave way as plaintiff stepped upon it, and caused him to fall, as he testified, the rung was loose and insecure at that time.

The testimony on the part of the defendant concerning the soundness of the ladder related to a time before and after the accident, but in a degree of remoteness therefrom that it did not preclude the possibility that the defect actually existed at the time of the accident, but had been immediately thereafter repaired by somebody, except only the testimony given by the shift boss, who descended the ladder about five minutes before the accident, and who testified that then "the ladder was all right, there was nothing wrong with it." But it is quite apparent even from the record of his testimony that he was conscious that he had made this statement of fact rather more strongly than he was justified in doing, because he added, "everything was—I could not find anything loose on it, that is, I didn't notice anything the matter with the ladder at all," clearly indicating the probability or possibility that a rung may have been loose which he failed to observe.

On the other hand, besides the testimony of the plaintiff as to the condition of the ladder and his consequent injury, one of his witnesses, who, it was shown, descended the ladder immediately before plaintiff descended it, testified in substance that when he reached the rung in question he felt that it was loose and avoided it by stepping over it to the next rung below. This witness was knocked from the ladder by the falling body of the plaintiff and was injured at the same time. Two other witnesses for the plaintiff, who descended the ladder a few minutes after the accident and were the last to leave the 1,200-foot level, each testified that when he descended the ladder he observed that the rung in question was missing, and

one of them testified to the finding of a similar rung at the bottom of the shaft, near the ladder, which he picked up but left in the place where he had found it. This testimony was also corroborated by the other witness. Moreover, the conflict in the evidence as to the condition of the ladder at the time of the accident would have been largely explained if, as a matter of fact, somebody had replaced the rung of the ladder during the interim of about thirty minutes between the changing of shifts, which would be a very natural thing to do, and which any one of the timbermen might have done to prevent injury to the workmen of the on-coming shift.

Therefore, so far as the soundness of the ladder, or the looseness of the rung, and the resulting injury to plaintiff, is concerned, there was a substantial conflict of evidence which required the jury to weigh the conflicting evidence and the credibility of the witnesses who testified thereto and determine the question of fact thus presented. In view of the verdict of the jury and the trial court's ruling on motion for new trial, that question of fact must be resolved against the appellant and in favor of the trial court's ruling.

The only question about which there can be any serious or reasonable controversy is as to when the rung became loose and whether the defendant had timely notice thereof, actual or constructive. It appeared without contradiction that the shift boss of the shift to which plaintiff belonged descended the ladder about five minutes before the accident occurred, when the workmen on his shift had finished their labor and were about to descend the ladder to the 1,300-foot level. If, therefore, there was any evidence tending to show that the rung was loose at that time, the jury would have been justified in finding that the shift boss either observed it or, in the exercise of ordinary care, should have discovered it and caused immediate repair of the ladder to be made. If the jury believed the testimony of the witness Katrinas, who appellant contends was impeached, to the effect that he had noticed loose rungs in the ladder for three or four days before the accident and had also observed a loose rung at or about 4 o'clock in the afternoon of the day of the accident, when he, the plain-

tiff, and others, including the shift boss, ascended the ladder to their work, then the question of facts as to whether the defendant had notice, actual or constructive, of such condition of the ladder, must also be resolved against the appellant, for it cannot in such a case be successfully contended that the defendant did not have at least ample time and opportunity to discover and repair the defect, especially in view of. the fact that the shift boss followed the men up the ladder that afternoon and was the first man to descend the ladder when the men quit their work that night. But if the jury did not believe this testimony given by the witness Katrinas—and it must be conceded that there is grave doubt as to its truth, as neither the plaintiff nor two of plaintiff's witnesses observed any such defects at that time, according to their testimony—there was nevertheless other evidence from which the jury could have found that the looseness of the rung had been caused some time between 4 o'clock that afternoon and the cessation of their work that night, and during the progress of said work, and therefore the defendant, through its shift boss, had timely notice thereof.

It was shown that the defendant was accustomed to use the manway in which the ladder was constructed for the purpose of hoisting heavy timbers from the 1,300-foot level to the 1,200-foot level, and that such practice sometimes caused those timbers to swing against the ladder and loosen its rungs, necessitating repairs, and that, while plaintiff and the workmen of the second shift were working on the 1,200-foot level on the day of the accident, such timbers were hoisted in the manway. Since there was no evidence of any other cause, it was for the jury to say whether or not the loose rung was caused by the hoisting of such timbers during that time. We cannot say that they were not justified in so affirmatively finding, and, if such was the fact, the shift boss, who preceded the men in descending the ladder about five minutes before the accident, had opportunity to discover it and cause it to be repaired, or at least the jury had the right to so find. Since the shift boss was charged with the duty of making necessary inspections and causing necessary repairs to be made, the

knowledge that he might thus have acquired would be imputed to the defendant, his principal.

While, as it appears, the defendant had the preponderance in number of witnesses, it does not necessarily follow that the preponderance of the weight of the evidence was on the side of defendant or that the preponderance of the weight of the evidence was not in favor of the plaintiff. It was a case of the credibility of witnesses, substantially conflicting evidence and inferences to be drawn therefrom, concerning which fair-minded men might reasonably entertain different conclusions. Therefore, as the existence of the defective rung and defendant's knowledge thereof and sufficient opportunity to remedy it are the only findings of the jury which appellant contends are not justified by the evidence, and the record discloses no substantial error, it must be held as a matter of law that the trial court did not abuse its discretion in denying appellant's motion for new trial. The judgment of the trial court is therefore affirmed, with costs to the respondent.

CORFMAN, C. J., and FRICK, GIDEON, and THURMAN, JJ., concur.